SECOND NATIONAL BANK OF BELOIT, WIS., Appellant, vs. THE O. E. MERRILL COMPANY, Respondent.

*September 27 — October 11, 1887.*

*Landlord and tenant: Trade fixtures, right to remove.*

1. A lessee of premises for a year at a fixed rent, who continues in possession afterward with the consent of his lessor, but without any new arrangement as to time, though with an understanding that he is to pay increased rent in case the lessor erects new buildings, is a tenant from year to year, and that relation continues until it is terminated by some subsequent act of the parties.
2. One who, while occupying premises for trade purposes as a tenant from year to year, takes a new lease thereof, with an agreement either express or implied on the part of his landlord that he shall still retain the right to his trade fixtures, does not thereby lose his right to remove them. To divest him of that right, there must be clear evidence, in the express terms of the lease or otherwise, showing that to be the intention of the parties.
3. Where the original lease was of the bare land and buildings and a water right, and the rent reserved was clearly not based upon the value of any trade fixtures put in by the lessee, but his right thereto was afterward recognized by his lessor, and the assignee of the lessor, in selling the premises, did not offer or profess to sell

such fixtures, but the purchaser bought with knowledge that he was to acquire no title thereto, and that they were claimed by the lessee, and subsequently by his silence acquiesced in that claim, and the new lease taken from such purchaser merely described the land and buildings and the water right, and did not in clear terms cover such fixtures or refer to them, *held*, that the acceptance of such new lease did not divest the lessee of his right thereto.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as part of the opinion:

This action was brought to restrain the respondent from committing waste by the removal of certain trade fixtures from the premises occupied by the respondent as the tenant of the appellant. A temporary injunction was obtained on the *ex parte* application of the appellant at the commencement of the action. The respondent answered the complaint, and then moved, upon his answer and affidavits, for a dissolution of the injunction. After a full hearing of the parties the learned circuit court dissolved the injunction. From the order dissolving such injunction the plaintiff appeals to this court.

The leased premises involved in this contract are several lots, and a water-power connected therewith. In 1881 the lots and water-power were owned by the "Rock River Paper Company." In that year the paper company built a large stone building on the premises. This building is known as the machine-shop. There was another building on said premises known as the foundry. In 1881 the Rock River Paper Company, being as above stated the owner of the lots, the buildings thereon, and the water-power, leased the said premises to O. E. Merrill individually. At the time O. E. Merrill went into possession as the tenant of the paper company, in 1881, there was no machinery of any kind in the stone building, and only a very little in the foundry. None of the machinery which the defendant and

respondent now claims the right to remove from said premises was on the premises when they were leased to the said O. E. Merrill in 1881. All the machinery in controversy in this action was placed upon said premises by said O. E. Merrill and the defendant, the *O. E. Merrill Company*, since 1881, and while they were in possession as the tenants of the Rock River Paper Company or its assignees; and was so placed upon said premises at their expense; no part of such expense was borne either by the paper company or by the plaintiff.

That it was always understood between the paper company and O. E. Merrill, its tenant, that the machinery and other trade fixtures placed upon said leased premises, and in the buildings thereon, should be the sole property of the tenant, is fully established by the evidence of Cobb, the superintendent of said company, as well as by the evidence of O. E. Merrill. This right of O. E. Merrill was recognized by Cobb, the superintendent of said company; and on the 4th of October, 1883, he, on behalf of said company, executed the following agreement in writing with said O. E. Merrill, which said written agreement was recorded in the office of the register of deeds of Rock county, viz.:

"This agreement, made and entered into this 4th day of October, A. D. 1883, by and between the Rock River Paper Company, of Beloit, Rock county, Wisconsin, party of the first part, and O. E. Merrill, of the same place, witnesseth: Whereas, the first party is the owner of real estate, water and water rights, occupied and used by second party for foundry and machine-shop premises, which premises are more particularly described in a deed from J. M. Cobb and wife to first party; and whereas, second party, during his occupation of these premises under and by virtue of a lease from first party, has built, placed, constructed, erected, and put into and upon said premises, and the buildings there-

upon fastened to the realty, buildings and otherwise, a boiler, engine, shafting, and various other machinery and tools: Now, therefore, in consideration of one dollar to it in hand paid, and of other valuable considerations, first party hereby covenants and agrees that each and every of the pieces of machinery and tools fastened to the realty or otherwise put, placed, constructed, or erected in or upon said buildings or premises by said party, are, shall be, and remain the property of said second party; and said second party shall have the right and privilege to remove or cause the same to be removed at any time during the time he shall occupy said premises by virtue of any lease from first party, and within a reasonable time after the expiration of any such lease, unless first party or its assigns shall in the meantime have purchased the same. Second party agrees to construct, erect, place, put in, or remove each and every piece of machinery and tools in such manner as to damage the realty and buildings as little as possible.

"In witness whereof the parties have hereunto set their hands and seals the day and year above written.

"ROCK RIVER PAPER COMPANY.

"By J. M. COBB, Superintendent.    [Seal.]

"O. E. MERRILL.    [Seal.]

"In presence of B. M. MALONE.

"A. M. MALONE.

"*State of Wisconsin, Rock county — ss.:* On the 4th day of October, A. D. 1883, came before me personally J. M. Cobb and O. E. Merrill, known to me to be the persons who signed and executed the above and foregoing instrument, and acknowledged that they executed the same freely, for the uses and purposes therein mentioned.

"B. M. MALONE, Notary Public for Wisconsin."

On the 26th of June, 1883, the paper company mortgaged the leased premises to the *Second National Bank of Beloit,* Starkweather, and L. Holden Parker, to secure the payment

of $22,546.90. This mortgage is not relied upon by the plaintiff as a source of title to the premises in question, or to the fixtures and machinery.

On the 3d day of November, 1883, the Rock River Paper Company executed and delivered to John Hackett a voluntary assignment of all its property for the benefit of its creditors. By virtue of this assignment, and under an order of the circuit court of Rock county, duly made in said assignment proceedings, on the 29th day of November, 1884, said leased premises were sold at public auction on the 30th day of December, 1884, for the sum of $20,000, to the plaintiff in this action. On the 8th day of January, 1885, the said sale was confirmed by the court, and a deed executed by the said assignee to the plaintiff. The $20,000, the bid for the property on this sale, was credited upon the mortgage held by said bank.

At the time of said sale and after, the said Merrill remained in the actual possession of said premises as the tenant of said assignee, and after the sale agreed to hold the premises as the tenant of the plaintiff; and thereafter, and on the 28th day of February, 1885, the plaintiff and the said O. E. Merrill duly executed in duplicate a written lease, the term of said lease to expire on the 1st day of January, 1886. The rent to be paid was at the rate of $1,600 per annum, payable in monthly installments in advance. On the 23d day of November this lease was assigned by the said O. E. Merrill to the defendant, the *O. E. Merrill Company.* This assignment was made with the written consent .of the plaintiff, and the plaintiff, also in the same writing, extended the lease for six months from the 1st day of January, 1886; and thereupon the said *O. E. Merrill Company* took possession under said lease and its extension, and have remained in possession up to the commencement of this action, paying monthly rent as stipulated in said lease. It is admitted that the defendant is about to remove some of the ma-

chinery and fixtures from said leased premises, and the plaintiff brings this action in equity to restrain it from so removing the said machinery and fixtures, or any part thereof, claiming that the same are a part of the realty, and are owned by the plaintiff under its purchase from the assignee of said " Rock River Paper Company." The learned circuit judge held that the plaintiffs were not the owners of said machinery and fixtures; or, if he did not hold that, he held that it had not shown such a clear legal title to the same as to justify a court of equity in enjoining the defendant from removing the same.

The cause was submitted for the appellant on the brief of *William Ruger*, and for the respondent on that of *A. A. Jackson*.

For the appellant it was contended, *inter alia*, that the machinery and trade fixtures in question were annexed to the realty, and were adapted to and used for carrying on the defendant's business therein, and were intended to be permanent. They were part of the realty, even though the tenant might have a right to sever and remove them during his term. *Gaffield v. Hapgood*, 17 Pick. 192; *Winslow v. M. Ins. Co.* 4 Metc. 310–11; *First Parish, etc. v. Jones*, 8 Cush. 190; *Bliss v. Whitney*, 9 Allen, 114–15; *Torrey v. Burnett*, 38 N. J. Law, 457; *Stokoe v. Upton*, 40 Mich. 581; *Stockwell v. Marks*, 17 Me. 460; *White v. Arndt*, 1 Whart. 91, 94; *Heffner v. Lewis*, 73 Pa. St. 310; *Beers v. St. John*, 16 Conn. 322, 330; *State v. Elliot*, 11 N. H. 543; *Preston v. Briggs*, 16 Vt. 124, 129; *Griffin v. Ransdall*, 71 Ind. 440, 443. The first tenancy terminated in January, 1882, and the right to remove fixtures under that expired long since. The defendant was then a mere tenant at will until the assignment by the lessor made November 3, 1883. *Cross v. Upson*, 17 Wis. 618, 623; *Webb v. Seekins*, 62 id. 26; Wood's Landl. & Ten. p. 34, and sec. 76. The tenancy under the assignee was also at will or by sufferance, and it was terminated by

the assignee's sale. *Howard v. Merrian*, 5 Cush. 563; *Mizner v. Munroe*, 10 Gray, 290; *Curtis v. Galvin*, 1 Allen, 215; *Farson v. Goodale*, 8 id. 202. · The taking a new lease from the purchaser at the assignee's sale was unquestionably the termination of that tenancy. Wood's Landl. & Ten. sec. 492; *Bailey v. Wells*, 8 Wis. 141, 158; *Livingston v. Potts*, 16 Johns. 28; *Overton v. Williston*, 31 Pa. St. 155; *Burk v. Hollis*, 98 Mass. 55. A tenant cannot sever and remove fixtures annexed by him during a former term, after taking a new lease which does not reserve to him that right. *Huebschmann v. McHenry*, 29 Wis. 655; *Josslyn v. McCabe*, 46 id. 591; *Watriss v. First Nat. Bank*, 124 Mass. 571; *McIver v. Estabrook*, 134 id. 550; *Loughran v. Ross*, 45 N. Y. 792; *Jungerman v. Bovee*, 19 Cal. 355; *Betts v. Wurth*, 32 N. J. Eq. 82; *Dingley v. Buffum*, 57 Me. 381; *Thresher v. E. L. W. Works*, 9 E. C. L. R. 198; *Heap v. Barton*, 12 C. B. 274; *Leader v. Homewood*, 94 E. C. L. R. 544; Taylor's Landl. & Ten. sec. 552; Wood's Landl. & Ten. secs. 526-7, 532; Ewell on Fixtures, pp. 142, 143, note on 144, 172-7; 1 Washburn on Real Pr. 20. The defendant has no right to remove as against plaintiff's unpaid mortgage, not merged in his title. *Frankland v. Moulton*, 5 Wis. 1. An injunction is the plaintiff's proper remedy. · Secs. 3170-9, 2774, R. S.; *Taylor v. Collins*, 51 Wis. 123; *Brock v. Dole*, 66 Wis. 142, 145-6.

For the respondent it was contended that until April, 1885, the defendant was a tenant from year to year. *Koplitz v. Gustavus*, 48 Wis. 48; *Ombony v. Jones*, 19 N. Y. 234, 241. His tenancy was not terminated by the assignment, no notice being given for that purpose. It had not expired when the lease of February 28, 1885, was made, and the lessee's right to his fixtures was not affected nor intended to be affected thereby. The engine, boiler, machinery, shafting and piping were not so attached as to be fixtures. *Lawton v. Lawton*, 3 Atk. 13; *Dudley v. Ward*,

Ambler, 113; *Dean v. Allalley*, 3 Esp. 11; *Rex v. Otley*, 1 Barn. & Adolph. 161; *Wansbrough v. Maton*, 4 Adolph. & El. 884; *Gale v. Ward*, 14 Mass. 352; *Carpenter v. Walker*, 140 Mass. 416; *Swift v. Thompson*, 9 Conn. 63; *Holmes v. Tremper*, 20 John. 29; *Cook v. Champlain Trans. Co.* 1 Denio, 102; *Walker v. Sherman*, 20 Wend. 640; *Blancke v. Rogers*, 26 N. J. Eq. 563; *Wheeler v. Bedell*, 40 Mich. 693; *Early v. Burtis*, 40 N. J. Eq. 501; *Burrill v. Lumber Co.* 32 N. W. Rep. (Mich.) 824; *Cooper v. Johnson*, 143 Mass. 108; *Walton v. Wray*, 54 Iowa, 531; *Cresson v. Stout*, 17 John. 116; *Murdock v. Gifford*, 18 N. Y. 28; *Bewick v. Fletcher*, 41 Mich. 625; *Ingersoll v. Barnes*, 47 Mich. 104; *Hill v. Sewald*, 53 Pa. St. 271; *Lemar v. Miles*, 4 Watts, 330; *Shell v. Haywood*, 16 Pa. St. 523. Whether they became fixtures depends upon the intention with which they were placed in the buildings. *Teaff v. Hewett*, 1 Ohio St. 511–530; *Taylor v. Collins*, 51 Wis. 127; *Conrad v. Saginaw M. Co.* 54 Mich. 249; *Mainwaring v. Jennison*, 27 N. W. Rep. (Mich.) 899; *Ferris v. Quimby*, 41 Mich. 202; *Farmers' L. & T. Co. v. Minneapolis E. M. Works*, 35 Minn. 543; *Tift v. Horton*, 53 N. Y. 377; *Globe Marble Mills v. Quinn*, 76 N. Y. 23; *Warner v. Kenning*, 25 Minn. 173; *Seeger v. Pettit*, 77 Pa. St. 437; *Hubbell v. East Cambridge, etc. Bank*, 132 Mass. 447; *Sudbury v. Jones*, 8 Cush. 184, 190; *McRea v. Central Nat. Bank*, 50 How. Pr. 57. The lessor's assignee took no greater rights than his assignor possessed. *Estabrook v. Messersmith*, 18 Wis. 552; *Hawks v. Pritzlaff*, 51 Wis. 160. And the purchaser from him took with both record and actual notice of the defendant's rights, and that they are not to be affected by the sale. *Bailie v. Rodway*, 27 Wis. 172; *Ecke v. Fetzer*, 65 id. 55. He was bound by the agreement of the first lessor in relation to them, as by a covenant running with the land. *Lappla v. Mackey*, 31 Minn. 75; *Coburn v. Goodall*, 14 Pac. Rep. (Cal.) 190; secs. 2194, 2195, R. S. The taking of a new lease of the premises was not

an abandonment of the personalty. Any presumption of a surrender of his rights arising therefrom may be rebutted. *Van Rensselaer's Heirs v. Penniman*, 6 Wend. 569; *Lawrence v. Brown*, 5 N. Y. 394; *Tracy v. Albany Exch. Co.* 7 id. 472, 475; *Wray v. Rhinelander*, 39 How. Pr. 299; *Abell v. Williams*, 3 Daly, 17; *Coe v. Hobby*, 72 N. Y. 141; *Kerr v. Kingsbury*, 39 Mich. 150; *Livingston v. Sulzer*, 19 Hun, 375. The plaintiff is estopped from claiming this property by his failure to assert his right to it before. 2 Pomeroy, Eq. secs. 802, 804 and notes; *Pickard v. Sears*, 6 Adolph. & El. 469; *Freeman v. Cooke*, 2 Exch. 654; *Manufacturers', etc. Bank v. Hazard*, 30 N. Y. 226; *Cont. Nat. Bank v. Nat. Bank*, 50 N. Y. 575; *Blair v. Wait*, 69 N. Y. 113; *Demyer v. Souzer*, 6 Wend. 436; *Gray v. Crockett*, 35 Kan. 66; *Swayze's Ex'r v. Carter*, 41 N. J. Eq. 231; Herman on Estoppel, secs. 409, 416–419. There are no equities in his favor to support an injunction.

TAYLOR, J.  It is hardly contended by the learned counsel for the appellant that the title to this machinery and fixtures passed to the plaintiff by the conveyance of the assignee of the paper company. But if such be the contention, it is very clear to us that such contention cannot be sustained. We think the evidence clearly shows that, from the time the paper company became the owners of the property upon which this machinery and fixtures are located, down to the time of the sale by its assignee, O. E. Merrill, of whom the defendant is assignee, was in the continued possession as the tenant of the said paper company, and not as a trespasser; and that as such tenant he placed said machinery and fixtures upon the leased premises. We think, also, that the evidence shows a tenancy from year to year, and not a tenancy at will, or by sufferance. The testimony of Cobb, the superintendent of the paper company, is quite conclusive upon this point. He testifies that when

the paper company became the owner of the premises, in 1881, O. E. Merrill was in possession as the tenant of the former owner, and it was then agreed, between the paper company and O. E. Merrill, that he should remain in the possession, as the tenant of the paper company, for the same rent he was paying for said premises before the company purchased, which was $300 per annum. He also testifies that after the company had built the large stone building on the premises, it was understood that the rent should be increased; and that Merrill agreed that, if the company would erect a wooden building on the premises, he would pay rent at the rate of $1,000 per year. He also testifies that no agreement for renting said premises to O. E. Merrill for any definite term was ever made after the new stone building was erected. He also testifies that it was always understood that O. E. Merrill would permanently occupy said premises in carrying on his business. He also says: "Merrill continued to occupy said premises as a tenant of said company until the date of said assignment, November 3, 1883."

Under these circumstances, we think, as the said Merrill entered into possession as a tenant for at least one year under the said paper company, at an annual rent of about $300, and having kept the continued possession without any other arrangement as to time, and with an understanding that the rent should be increased to compensate the paper company for the buildings erected by it on the premises, Merrill must be held to be a tenant from year to year, until such tenancy was terminated by some subsequent action of the parties. This tenancy continued, we think, up to the time of the execution of the lease between the plaintiff and O. E. Merrill, in 1885. Previous to this last date there was no written lease of the premises to the said O. E. Merrill.

Sec. 2187 provides that, "if a tenant for a year or more

shall hold over after the expiration of his term, he may, at the election of his landlord, be considered a tenant from year to year, upon the terms of the original lease." We think it clear, from the testimony in the case, that both the paper company and its assignee recognized O. E. Merrill as a tenant from year to year, and the only dispute between them was the rent to be paid by such tenant.

After the purchase by the bank, the old tenancy was terminated by a lease executed between the parties, fixing the termination of it at a particular date, viz., January 1, 1886; but this time was extended by agreement of the parties so that the defendant's term was not terminated when this action was commenced.

It is hardly necessary to go into any lengthy discussion to show that a tenant who occupies leased premises for the purposes of trade or manufacturing, has the right to remove, during his tenancy, machinery or other erections necessary or convenient for carrying on his business, which can be removed without doing any permanent injury to the freehold. It is not, in fact, contended by the learned counsel for the appellant that the defendant would not have the right to remove the machinery and fixtures in question, if they had been placed on the premises during a tenancy, the term of which had not expired at the time he sought to remove them, or within a reasonable time after such tenancy had expired, he not having yet surrendered his possession as tenant. A few of the numerous cases cited by the learned counsel of the respondent in his brief, sufficiently state the rule for the purposes of this case. *Van Ness v. Pacard*, 2 Pet. 137, 145; *Penton v. Robart*, 2 East, 88; *Holbrook v. Chamberlin*, 116 Mass. 155; *Walker v. Sherman*, 20 Wend. 636; *Conrad v. Saginaw Mining Co.* 54 Mich. 249; *Josslyn v. McCabe*, 46 Wis. 591, 592; Wood, Landl. & Ten. 907, and cases cited; *Torrey v. Burnett*, 38 N. J. Law, 457. These cases are amply sufficient to show that the defend-

ant, as tenant, had the right to remove the machinery and fixtures in question, unless they have lost their right to said fixtures by the termination of the tenancy during which they were placed upon the premises, before the removal of the same, and the acceptance of a new lease from the landlord or his grantee after the expiration of such tenancy. It must be admitted that the rule established at law is that, if a tenant, having placed erections or machinery upon the leased premises during his term which would be deemed a part of the realty as between grantor and grantee, at the end of his term surrenders the actual possession of the leased premises to his landlord, without first removing such erections or machinery, and without obtaining the right to remove them from the landlord after the surrender, either by the terms of the lease or by agreement with the landlord at the time of the surrender, he waives his right to so remove the same, and they become the property of the landlord. See *Josslyn v. McCabe*, *supra; Keogh v. Daniell*, 12 Wis. 164; and numerous other cases cited by the learned counsel for the appellant in his brief.

In the case at bar there has been no actual surrender of the possession of the leased premises by the tenant to the landlord, with the trade fixtures remaining thereon; but it is urged by the learned counsel for the appellant that the accepting of the new lease from the plaintiff in 1885 was equivalent to a surrender of such actual possession, and therefore destroyed his right to remove the fixtures; and he cites several authorities which hold that rule. But we think such taking of a new lease does not necessarily destroy the right of the tenant. If he take the new lease with an agreement, either expressed or implied, with the landlord that he shall still retain the right to remove the fixtures, his right is not lost by accepting such lease, any more than it would be if he surrendered the actual possession, having at the same time obtained the permission of the landlord to

AUGUST TERM, 1887.            513

Second National Bank of Beloit, Wis., vs. The O. E. Merrill Co.

remove such fixtures after such surrender. All the cases hold that if the landlord agrees that the tenant may remove the fixtures after a surrender of his possession, the landlord is bound by such agreement, and the tenant retains the right to remove the same after such surrender.

It would seem that the reason upon which the courts have based the rule that the tenant cannot re-enter and remove his fixtures after surrender of the possession under his lease, is that such surrender is presumed to be intended either as a gift of the fixtures to the landlord, or, if not a gift, a waiver of any right to re-enter and remove them. It becomes, therefore, to some extent at least, a question as to the intention of the parties; and when the evidence clearly shows that there was no intention on the part of the tenant to relinquish his unquestioned right to the fixtures, and there is also evidence showing that the landlord understood such intention, and acquiesced therein by promising him that he might remove them after the surrender, the right is not lost. See *Torrey v. Burnett, supra,* and *Keogh v. Daniell,* 12 Wis. 164, 172. In the case of *Torrey v. Burnett, supra,* the court, speaking of the insufficiency of a mere declaration of the tenant that he does not waive his right to remove his fixtures after he makes an actual surrender of the premises, say: " But while this seems clear, I think it is equally so that this legal presumption of a gift may be repelled by proof of the assent of the landlord to the retention by the tenant of his right of removal. In my opinion, if the landlord should say to the tenant that he should have a certain time within which to remove his fixtures, such a license would be valid, and would prevent, for the time being, the incorporation of the fixtures into the land. Such stipulations as these are common in leases, and in that form have been frequently enforced by judicial action." It was held in this case that when the landlord had agreed, before the tenant had finally yielded up the possession of the

premises, that he would endeavor to effect a sale of the fixtures for the benefit of the tenant, the right of the tenant to the fixtures remained in him after the surrender, and was subject to attachment by a creditor of the tenant. In this case the fixture was a steam-engine. This case was commented upon by this court in *Josslyn v. McCabe*, 46 Wis. 591, and while the late chief justice questioned whether a mere promise of the landlord, before the actual surrender of the possession of the tenant, to assist in selling the fixtures amounted to an agreement by which the title to fixtures should remain in the tenant after the surrender, yet in the commencement of the opinion he expressly states that if a tenant reserves by agreement with the landlord the right to remove the fixtures, the tenant does not lose his right to them by surrender of his possession of the premises with the fixtures thereon.

The rule which is applied to cases of actual surrender of the possession to the landlord applies with much greater force when it is sought to divest the right of the tenant to his trade fixtures, because he takes a new lease from his landlord, extending the time of his tenancy. In that case there is no actual transfer of the possession of the fixtures to the landlord. The tenant at all times retains the actual possession and control, and in such case, we think, there ought to be something more than the mere taking of a new lease extending the term to divest the tenant of his right. If he accepts a lease which in express terms recognizes the right of the landlord to the fixtures, and he agrees to pay rent for their use thereafter, and keep them in repair, and surrender their possession at the end of the new term, a strong case would be made out in favor of a surrender of the fixtures to the landlord by the acceptance of such new lease, and it would require very clear evidence that, notwithstanding the acceptance of such new lease, there was an agreement that the title to the fixtures should remain in

the tenant. If it should be admitted that the general words of description in the new lease would under ordinary circumstances be a lease of the fixtures as well as of the land and buildings, still the lease only raises a presumption that it was intended to cover the fixtures, and it is open to proof whether it was in fact intended to cover such fixtures, or whether they were intended by both parties to be excepted therefrom.

Upon this question the evidence in this case is, in brief, that in 1881 O. E. Merrill leased the bare land, and the stone house and foundry building, with a water-right, of the plaintiff's grantor. All the evidence shows that neither party supposed or expected that the lease would cover or did cover any fixtures or machinery put or to be put thereon by the tenant. The right of the tenant to all the machinery and fixtures was expressly recognized by a writing by the superintendent of the landlord only a very short time before the landlord made his assignment. The rent reserved in the lease was clearly not on the basis of the value of the fixtures. The assignee never claimed any right to the machinery and fixtures, and in his order for the sale, and notices thereof, and in his deed to the plaintiff, he uses the most general terms in the description of the premises sold and conveyed to the plaintiff. There is not the slightest mention of such machinery or fixtures in the petition, order, notice of sale, or deed given upon such sale. At the time the sale was made by the assignee, it was made known to those present, including the plaintiff, that the tenant, O. E. Merrill, claimed to own and did own the machinery and fixtures, with a few exceptions, not in controversy in this case. At that time all parties seemed to acquiesce in the claim of the tenant to the fixtures. Charles B. Salmon, who was present at such sale, in his affidavit, read on the hearing of the motion to dissolve the injunction, testifies " that it was understood by all persons present at the sale

made to the said plaintiff that it did not include the engine, boiler, shafting, machinery, and piping, or any part of it, but that it included only the land and buildings standing upon it, the water-wheel and the shafting leading from the water-wheel to the foundry, and that after such sale O. E. Merrill continued to carry on the business the same as he did before the sale." This statement of Salmon is not contradicted in the evidence upon the motion. The premises are described in the deed given to the plaintiff on the assignee's sale as certain lots, describing them, and then the deed proceeds as follows: "Also 340 inches of water drawn from the main-race leading from the dam across Rock river; also the right to use said water as it is now used, in connection with the iron foundry and machine-shops on said first-named lots, or some of them; also the building attached to said foundry and machine-shop, which is built over said main-race, and resting in part on lot 3, in block 14."

After the purchase by the appellant, and about August, 1885, O. E. Merrill sold and transferred all the fixtures and machinery involved in the action to the defendant, the *O. E. Merrill Company;* and at the same time assigned his lease from the plaintiff to him, which assignment was assented to by the plaintiff. This witness also testifies that shortly after the defendant had purchased said machinery, etc., and took an assignment of said lease, he made a statement to the plaintiff bank of the property of said defendant, for the purpose of getting discounts at·said bank. This statement was repeated several times thereafter, and in such statements he included the fixtures and machinery in question as its principal assets, and that the plaintiff did not at either of said times inform this deponent that it claimed any right, title, or interest in or to any of such machinery. He also says that at the time the plaintiff extended the lease given to O. E. Merrill to the defendant, the plaintiff did not suggest that it claimed, or had any right, title, or

interest in, the machinery in question, and at all times acquiesced in the title claimed by the defendant. This witness also testifies that about the first of May, 1887, he sold for the defendant to a Chicago firm one large lathe and one shaper, of the value of about $2,000; that he loaded said machinery on the cars to be transported to Chicago; that after they were loaded, L. Holden Parker, the assistant cashier of the plaintiff, and one of its directors, came to him and desired that he would sell said machine to some person who would rent the buildings of the plaintiff, and continue the business that had been carried on in said buildings, and he proposed to try and find such purchaser himself, and that he desired the witness to hold the cars until the next day; that in the same conversation he asked if the defendant would consider an offer of $10,000 for said engine, boiler, shafting, machinery, and piping, and that the witness advised him that the defendant would not take less than $17,000, and Parker said the plaintiff could not pay so much for the machinery. This conversation with the assistant cashier of the plaintiff is not denied by such cashier, although he gives a somewhat different version of it.

The description of the property in the lease from the plaintiff to O. E. Merrill is the same as in the deed from the assignee to the plaintiff, as above stated. The very general description of the property in the deed of the assignee to the plaintiff, and in the lease from the plaintiff to O. E. Merrill, is quite consistent with the claim made by the defendant, that it did not cover and was not intended to cover the machinery and fixtures in controversy, and the lease does not, therefore, stand in the way as an estoppel, or otherwise, upon the defendant from claiming title to the machinery and fixtures in question. If the taking of the lease from the plaintiff was intended as a lease of the land and buildings only, with the water privilege, then it does not stand in the way of the defendant's right. If the de-

fendant's vendor did not lease of the plaintiff the fixtures, etc., then such lease is no waiver of his right to them, nor is it evidence of a gift of them to the plaintiff. If we lay aside this lease, all the evidence in the case shows that the title to the fixtures and machinery has always been acknowledged to be in O. E. Merrill, up to the time he transferred them to the defendant. Under these circumstances we do not think it would be just or equitable to hold that the lease of 1885 was conclusive against the right of the tenant.

We are of the opinion that his right to the fixtures may be maintained upon two grounds: *First*, that the plaintiff acquired no title to the machinery, etc., by their deed from the assignee, and that they never claimed to have acquired it by said deed, and, never having acquired the title by such purchase, they did not in fact lease such fixtures, or intend to lease the same, to the tenant, O. E. Merrill, by their written lease of 1885, and consequently there was no waiver of the tenant's right by accepting such lease; and, *second*, upon the ground that if it be admitted that the general description in the lease is sufficient to cover the machinery and fixtures, that there is sufficient evidence in the case from which it may be found that the plaintiff either expressly or impliedly agreed with O. E. Merrill that his title to the said fixtures and machinery should remain in him notwithstanding the general terms of said lease.

The case of *Kerr v. Kingsbury*, 39 Mich. 150, is a case in which the facts were quite like those in the case at bar. In that case it was held that the taking of a new lease did not under the circumstances of the case work a transfer of the trade fixtures to the new landlord. Justice COOLEY, after stating the general rule that a surrender of the actual possession of the premises by the tenant to the lessor either operates as a gift to the landlord, or an absolute waiver of the right to remove such fixtures, and after giving the supposed reason for the rule, proceeds as follows: "But why

the right should be lost when the tenant takes a renewal of his lease, is not very apparent. There is certainly no reason of public policy to sustain such doctrine. On the contrary, the reasons which saved the tenant his right to the fixtures, in the first place, are equally influential to save to him on a renewal what was unquestionably his before. What could possibly be more absurd than a rule of law which should in effect say to the tenant, who is about to obtain a renewal: ' If you will be at the expense and trouble, and incur the loss, of removing your erections during the term, and of afterwards bringing them back again, they shall be yours; otherwise you will be deemed to abandon them to your landlord.' " The learned judge then cites some of the cases which have held that the taking of a new lease operates as a waiver of the right to remove such fixtures, and stating that the reason of the rule is founded upon the supposed fact that by accepting such new lease the tenant in express terms acknowledges the ownership of the landlord by leasing from him such fixtures and machinery, and agreeing to return them to him at the termination of the tenancy. The learned justice admits the force of the rule as stated, if the second lease in fact includes the fixtures and machinery, and then adds: "But unless it [the new lease] does so in terms or by necessary implication, it is begging the whole question to assume that the lease included the buildings as a part of the realty. In our opinion it ought not to be held to include them, unless from the lease itself an understanding to that effect is plainly inferable." In this case the contention was as to the ownership of buildings put on the leased premises for trade purposes. The new lease, it would appear, merely described the lots on which the buildings were situated, and the court held that, under the circumstances of the parties at the time the lease was accepted by the tenant, it ought to be construed as not intended to include in such description the buildings placed upon the leased

premises by the tenant, and which they had the right to remove at the time the new lease was accepted.

Under the facts and circumstances attending the acceptance of the new lease in the case at bar, and construing the lease in view of such attendant facts and circumstances, we think it ought to be construed as not intended by either party to cover any other property than that purchased by the bank at the assignee's sale, and that it would be an unauthorized construction of the general words of the lease to hold that they were intended to cover the fixtures and machinery placed on said property by the defendant or its assignor, O. E. Merrill. Such construction would clearly work great injustice to the defendant, and should not be given, unless, by the most positive rules of law governing the construction of contracts, such construction is the only one that can be given them. That such construction would ordinarily be the one that would be given to such general words of description between grantor and grantee is not necessarily conclusive as to the construction which should be given in the case of lessor and lessee. The situation of the lessor and lessee in a case of this kind, at the time the new lease is made, is entirely different from that of grantor and grantee. In the case of grantor and grantee, the usual *status* of the parties is that, before the grant is made, the whole right is in the grantor, and the grantee is purchasing all his rights; in the case of a tenant having made and owning fixtures and machinery of equal or greater value than the realty on which it stands, and being in the actual possession, and, with the right to remove the same, treating with his landlord or the grantee of such landlord for a new lease, he is not supposed to treat for a lease of what he already owns, but for a lease of what the landlord owns; and if he accepts a lease which does not in clear terms cover the property which he himself owns, it ought not, as against him, and for the purpose of working a release of his

right to the landlord, be construed to cover such property. For the reason that the great preponderance of the evidence in this case clearly shows that it was understood that the tenant's right to his fixtures and machinery should remain in him notwithstanding the acceptance of a new lease, and because there is nothing in the terms of the new lease which must necessarily be construed as a letting by the landlord to the tenant of such fixtures and machinery, and an acceptance by the tenant of a lease of the same,. with a covenant to return them to the landlord at the end of the lease, we think the right of the tenant to remove the trade fixtures and machinery placed upon said premises by him has not been lost; that such fixtures and machinery are still owned by him, and that he has the right to remove the same. This discussion is based upon the facts as they appear in this record, and will not be conclusive of the case if the plaintiff should, upon the trial of the case, show a different state of facts.

*By the Court.*— The order of the circuit court is affirmed, and the case is remanded for further proceedings.