WARREN H. LEWIS, Respondent, *v.* THE OCEAN NAVIGATION AND PIER COMPANY, Appellant.

A tenant having the right to remove fixtures placed by him upon the demised premises during the term, in case he holds over after its termination without a new lease, has the same right of removal so long as he remains in possession, and on being evicted by summary proceedings on account of such holding over, if he claims and is refused the right to take such fixtures with him, he may maintain an action for their conversion.

Where a judgment may have proceeded upon either of two or more distinct facts, a party seeking to avail himself of it in a subsequent action as conclusive evidence as to one of those facts, must show affirmatively that it went upon that fact.

Defendant leased plaintiff and another certain vacant lots at a summer resort, for two seasons. The lease provided that the lessees should erect a building thereon, which they were entitled to remove at the expiration of the lease, if all the rents and arrearages were fully paid; if not paid, it was provided that "the said building shall be forfeited to and become the property" of the lessor. The lessees erected a building in such manner that it could be removed; they failed to pay the installments of rent for the last season as they fell due, but before its close paid all but $150; they remained in possession after its close, and during the winter paid the balance. In the following May, summary proceedings were brought against them for wrongfully holding over beyond the term. The plaintiff, to whom his co-tenant had assigned his interest, joined issue, alleging that defendant had renewed the lease for the next season. Judgment was rendered against plaintiff, and he was ejected accordingly; he claimed at the time the right to remove the building, but the officer who executed the writ refused to allow him to do so; he thereafter attempted the removal, but was prevented by defendant. *Held,* that the provision for forfeiture in case of default in the payment of rent was in its nature simply a security for such payment, which might be waived by the lessor; that if so waived, plaintiff had the right to remove the building, and an action for the conversion thereof was maintainable.

Upon the trial, plaintiff testified, under objection, to a conversation had, with the president of the defendant before the close of the last season covered by the lease, in which the latter told him to go on and pay the balance of the rent due, and he could stay another year, and he would be able to make it up another season; that in consequence of this conversation, he paid the rent and remained in possession. This testimony was subsequently stricken out on the ground that plaintiff was concluded by the judgment in the summary proceedings, and plaintiff nonsuited. *Held,* error; that the evidence tended to establish a waiver of the forfeit-

ure, and at least left the question one of fact for the jury; that while the summary proceedings adjudicated that no leasing for another year had been made, as it did not appear upon what ground the decision was based, and as it might have been upon the ground that defendant's president had no authority to lease for another season, the judgment was not conclusive; that the burden of proof was upon defendant to show that it went upon the ground that no agreement was entered into with its president.

*Loughran* v. *Ross* (45 N. Y. 792), distinguished and criticised.

(Argued December 19, 1890; decided January 13, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made February 12, 1889, which set aside an order nonsuiting plaintiff and granted a new trial, the exceptions having been ordered to be heard in first instance at General Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wm. C. De Witt* for appellant. There was no conversion by the defendant of the property in suit. (*Jackson* v. *Allen,* 3 Cow. 220 ; *Bleecker* v. *Smith,* 13 Wend. 531, 534 ; *Hunter* v. *Osterhoudt,* 11 Barb. 33.) Irrespective of the foregoing point, upon the failure of the plaintiff to remove said building at or prior to the expiration of said lease, said building became the property of the defendant. (*Loughran* v. *Ross,* 45 N. Y. 794 ; Taylor on Landl. & Ten. § 551.) The claim of the plaintiff that up to, and at the time of the proceedings to dispossess him, he and his co-tenant were in possession of the premises in question under a new lease thereof from the defendant for one year from the termination of the original lease, even if true, cannot avail the plaintiff beneficially, but, on the contrary, is fatal to this action. (Taylor on Landl. & Ten. § 552.) The General Term erred in eluding the conceded law of the case by assuming that there had been a verbal agreement between the landlord and tenant by which the tenant was permitted to hold over for another term and pay the rent, for which he was in default, during this continu-

ance. ( *White* v. *Coatsworth,* 6 N. Y. 137; *Kelsey* v. *Ward,* 16 Abb. Pr. 98; 38 N. Y. 83.)

*George W. Roderick* for respondent. The failure of the plaintiff to pay the installments of rent punctually on the particular dates specified in the lease did not *ipso facto* work a forfeiture of the plaintiff's building to the defendant or operate as a transfer of the title of the plaintiff to the defendant, in the absence of any entry or actual possession by the defendant, or surrender or new agreement on the part of the plaintiff, and even if the time for the payment of the balance of the rent for the season of 1885, had not been extended by the defendant, the plaintiff while in possession, and having paid his rent in full could lawfully remove his building. (*Penton* v. *Robart,* 2 East, 88; *Ombony* v. *Jones,* 19 N. Y. 234; *Van Ness* v. *Packard,* 2 Pet. 137; *Dubois* v. *Kelly,* 10 Barb. 507, 509, 510; *Moore* v. *Wood,* 12 Abb. Pr. 393; *Robert* v. *Kain,* 6 Robt. 354; *Clarke* v. *Howland,* 85 N. Y. 204; *Wansbrough* v. *Maton,* 4 Ad. & El. 884; Tyler on Fixtures, 427; *Esterbrook* v. *Martin,* 7 N. Y. S. R. 786; *Garner* v. *Hannah,* 6 Duer, 262, 273; *Barter* v. *Lansing,* 7 Paige, 350; *Ludlow* v. *N. Y. & H. R. R. Co.,* 12 Barb. 440; *Duryee* v. *Mayor, etc.,* 96 N. Y. 495, 496, 497; *M. L. Ins. Co.* v. *N. N. Bank,* 79 id. 568.) Time was not made the essence of the contract, it was the ultimate payment of the rent which was intended to be secured; and the provision in the lease that if the rent was not fully paid at the expiration of the term the tenant's building should be forfeited and become the property of the defendant, was designed merely as security to enforce or secure the payment of the rent in full. (Story's Eq. Jur. §§ 1312–1316; Taylor on Landl. & Ten. § 495; *Phillips* v. *Doolittle,* 8 Mod. 345; *Wilson* v. *Jones,* 1 Bush. 173; *Giles* v. *Austin,* 62 N. Y. 486; *Davis* v. *West,* 12 Ves. 475; *O'Connor* v. *Spaight,* 1 Sandf. 305; *Beasley* v. *Darcy,* 2 id. 403; *Garner* v. *Hannah,* 6 Duer, 262, 273.) The trial judge erred in holding that the plaintiff's remedy was by an action in equity for leave to redeem. (*Moore* v. *Wood,* 12 Abb. Pr.

393 ; *Wansbrough* v. *Maton*, 4 Ad. & El. 884 ; Story's Eq. Jur. § 1301.)

Peckham, J. The defendant being the owner of some land near the old iron pier at Coney island, leased the same to the plaintiff and one Tuthill the latter of whom subsequently assigned all his rights under the lease to the plaintiff.

The lease was dated April 12, 1884, and was for the term of two consecutive seasons, commencing on the above-named date, and to terminate with the close of the season of 1885, unless sooner determined for violation of the terms of the lease.

The lessees agreed in the lease to erect upon the premises thus leased a building which was to be strictly in accordance with plans to be first submitted to and approved by the secretary of the defendant. The lease then contained the following additional clause in regard to the rights of the lessees :

" They shall be entitled to remove said building at the expiration of this lease, if all rents and arrearages of rents shall be fully paid ; if not so paid, the said building shall be forfeited to and become the property of the party of the first part."

The lessees were to have the right to use the building for a restaurant and saloon (bar-room), but for no other purpose. They agreed to pay as rent $2,000 for each season at specified times and in stated instalments, the last payment in each year being due July fifteenth.

The lessees entered into possession of the premises under the lease and built a building for a restaurant and saloon which, so far as appears, was entirely satisfactory to the defendant, the lessor. It was so built as to allow of its being taken down and carried away. It was built on blocks, buried about three feet in the sand, and upon these blocks posts were set and the sand filled up against them. Sills were then placed on the posts and the building erected. It was built for the very purpose of being easily and safely removed. It was shown by the evidence to have been worth, as a movable building, in the vicinity of $3,000.

No fault is found in regard to the first season, and no complaint is made that the rent was not promptly paid.

By July 1, 1885, the plaintiff was in arrear in rent for that season, and on the fifteenth, which by the terms of the lease was the day when the last payment to make up the $2,000 rent for the season, was due, the plaintiff was still in arrear. On the thirteenth of July he paid the president of the defendant $150, in consequence of a conversation that he said he had with him on that day, and he thereafter paid in instalments a part of the rent, so that when the season ended he was in arrear but $150, which he paid in February, 1886. He remained in possession of the premises up to May, 1886, when he was ejected by virtue of summary proceedings commenced against him by defendant as holding over after the expiration of his term under the written lease. He joined issue in those proceedings and claimed that the defendant had renewed the lease for another season — that of 1886. This issue was found against him, and he was ejected accordingly. At the time of his ejection he claimed the right to remove the building; said it was his and he would remove when he had an opportunity to take his things. He was refused the privilege of taking anything, and subsequently on attempting to remove the building, was threatened with arrest and prevented from taking it down.

The plaintiff subsequently brought this action to recover from defendant the value of the building which he claimed the defendant had converted to its own use.

On the trial the plaintiff proved a conversation which took place in July, 1885, between him and the president of the defendant in regard to the rent. The plaintiff had already testified that when one of the payments came due in July he had seen the president, and said to him that he was short of money, and that the president had agreed verbally that if the boats did not run the plaintiff need only pay half rent, as plaintiff says he was doing very little business. He was then asked: "What was said about your remaining there?" This was objected to on the ground that the proceedings before the justice were *res adjudicata*, and as immaterial. The objection

was sustained and the plaintiff excepted. The plaintiff then
testified that in the same conversation he had with the presi-
dent in July, the president told him to go on and pay the
balance of his rent, and he would be able to make it up next
season. The president said that he could not give plaintiff a
long lease, but plaintiff could stay on another year and run it
the way he was then doing, that they had no fault to find
with him. Plaintiff then says he borrowed $150, and paid it
to the president on that day. He was then asked if it was in
consequence of that conversation that he remained in posses-
sion there, and he said it was. This was objected to as irrele-
vant and incompetent. The objection was sustained, and the
evidence was stricken out on motion. It is not perfectly plain
from the record whether the whole of this conversation was
stricken out, or only that portion which was in answer to the
question as to the reason why plaintiff remained in possession.
Some portion of the evidence was, at any rate, stricken out,
and after the record of the summary proceedings was put in, the
complaint of plaintiff was dismissed, substantially on the ground
that no cause of action had been proved. I think it was erro-
neously dismissed, and the evidence erroneously stricken out.

The agreement in the lease for the forfeiture of the build-
ing to the lessor in case the rent was not fully paid at the
expiration of the lease was, in its nature, a security for the
payment of the rent.

The purpose for which the building was erected, and the
manner of its erection, and the fact that it was erected by a
tenant to carry out the business in which he was embarked, and
for which he had leased the premises, all tend to confirm the cor-
rectness of the conclusion that even without the agreement the
lessee would have had the right, in any event, to remove the build-
ing at the expiration of the lease, as being his own property, and
the lessor would have had no right to prevent him from making
such removal. (Ombony v. Jones, 19 N. Y. 234, 239, 243.)

The right of forfeiture of the building in case the rent was
not fully paid at the expiration of the lease was a right which
might be waived by the lessor. Whether the lessor did so waive

it or not would have been a question of fact if the evidence obiected to and excluded had remained in. If the president of the defendant told the plaintiff in July, 1885, before the termination of the lease in the middle of the following September, that he might go on .and pay the balance of the rent and make it up the next summer, and that the plaintiff could stay another year, and if, in consequence and upon the faith of that conversation, the plaintiff continued in possession after the termination of the lease, and failed before that time to pay the $150 and remove the building, I think it clear that if the jury had found these facts there would have been proved a waiver of this right to insist upon the forfeiture of the building on account of the non-payment of the balance of $150 due for rent before the termination of the original lease. The most that, under such circumstances, could be insisted upon would be the payment of all rent due before the termination of the possession, in which case the right to remove existed.

It cannot be supposed that the parties contemplated this forfeiture of the building by the failure to pay the $150 before the end of the season in September, 1885, assuming that the lessor had told the lessee he might remain in possession another year. At the least, the intention of the parties as to the waiver was upon this evidence a question of fact, and the evidence should have been retained for the purpose of submitting it to the jury.

The reason for the striking out of this evidence was, as I gather from the record, that the summary proceedings adjudication was regarded as conclusive upon the parties, and that no evidence of a conversation in which defendant's president agreed to let the plaintiff remain on the premises for another year, was admissible, because it had been determined in those proceedings that no leasing for another year had been made, and that the plaintiff was holding over under the written lease in evidence.

I think this was giving entirely too broad an effect to that adjudication in the light of the evidence then before the court. There is nothing in this record showing upon what basis the adjudication in summary proceedings was made. It may have

proceeded upon the ground that no authority was shown on the part of the president to make the lease, and that there was no proof of a due ratification of it by the defendant corporation. The plaintiff here had put in a sworn answer in those proceedings in which he had claimed that his term did not expire until the end of the season of 1886, by virtue of an agreement with the landlord through its authorized agent, which he claimed the president was. The record which adjudged that there had been no extension of the term of the original lease, and that the plaintiff was holding over after its termination, would not necessarily be inconsistent with the facts above stated by the plaintiff, as to the president's promise, and his faith in it and action upon it. And while those facts might not be sufficient to show either a valid letting by an authorized agent of defendant for another year, or a subsequent ratification by the defendant, it might yet furnish enough evidence of a waiver of the forfeiture condition in the lease to be submitted to the jury.

It is true that the decision of a fact once litigated between the parties is conclusive ever afterwards. But here is simply on record an adjudication that the plaintiff was holding over after the expiration of the term of the original lease. This adjudication may have been reached by finding that no such agreement was ever made with the president of the defendant, as plaintiff testified to. It may have been reached by finding that the agreement was made, but that the president had no power to make it, and the defendant never ratified it after knowledge of its existence. If the defendant claim that the adjudication was based on the fact that no such agreement was ever made with the president, the burden lay upon it to prove it. In such a case where a judgment may have proceeded upon either or any of two or more different and distinct facts, the party desiring to avail himself of the judgment as conclusive evidence upon some particular fact, must show affirmatively that it went upon that fact, or else the question is open for a new contention. (*Bell* v. *Merrifield*, 109 N. Y. 202, 211; *Russell* v. *Place*, 94 U. S. 606; *Cromwell* v. *County of Sac*, Id. 351.)

While the president of the defendant might have had no power to bind the defendant by his agreement for an extension of the term of the lease, his promise and action may have been sufficient to prevent the defendant from insisting upon a forfeiture of the building after the plaintiff had relied upon a waiver of the power to forfeit and had acted upon the faith of the same, and where he would be subjected to great damage by permitting the defendant to repudiate or revoke such waiver. The defendant might in that case be estopped by the action of its president. The estoppel might be insisted upon so far as the waiver of the forfeiture was concerned, because the plaintiff might have altered his conduct to his otherwise prejudice in reliance upon it. That is, he may have left the building upon the premises after the termination of his lease, and the attempt to retain it by reason of the forfeiture clause would damage him. The same reasoning might not apply to an extension of the term of the lease. By refusing to ratify the president's agreement, and yet permitting the plaintiff to remove his building, the plaintiff might not be placed in any worse position than if he had surrendered possession and removed his building at the end of the original term. Hence conduct which might estop the defendant from insisting upon a forfeiture or compel it to ratify a waiver thereof made by its president, may not have been sufficient to compel the recognition by it of an illegal renewal or extension of the term of the original lease by its president. The two positions might, therefore, be entirely consistent.

If the evidence under discussion had been received and submitted to the jury, the fact of a waiver of this right to claim a forfeiture might have been found, and the case would then be that of a tenant with a right to remove a fixture at the termination of his lease, holding over after such termination, and on being evicted by summary proceedings on account of such holding over, claiming and being refused the right to take such fixture with him. The defendant claims the tenant has no such right after the termination of the tenancy. He urges that the right must be exercised during the running of the

term, and if delayed longer than that time, even though the ten·
ant remain in possession he cannot remove the fixture. I think
no such absolute rule exists in this state. In *Dubois* v. *Kelly*,
(10 Barb. 496), it was held that the right which a tenant has
by agreement with the landlord to remove such buildings as
he may erect for the purpose of his tenancy, remains with
the tenant after his term expires and while he still remains in
possession of the premises. In *Ombony* v. *Jones* (19 N. Y.
234), although the opinion in the *Dubois* case was somewhat
criticised upon the question as to what things a tenant had, in
the absence of agreement, a legal right to remove from the
land to which they had been affixed, yet the question as to the
time of such removal (while the tenant still remained in pos-
session) was not criticised or discussed. It has not been
denied, that I can find, in any case here. The title of the
landlord to fixtures which the tenant has left after the expira-
tion of the term and after his delivery of possession, and
which the tenant would otherwise have had the right to
remove, is based upon the presumption of abandonment by
the tenant to the landlord. No such presumption can attach
so long as the tenant remains in possession. In *Loughran* v.
*Ross* (45 N. Y. 792), it was held that where a tenant had a
right to remove fixtures erected by him on the demised prem-
ises, yet if he accepted a new lease of the premises including
such fixtures without reservation or mention of any claim to
them, and entered upon a new term under the new lease, he
lost the right of removal, even though his possession had been
continuous. The decision in that case was placed upon quite
technical reasoning, supported it is true by some authorities,
but it is not one of those cases whose principle should be
extended. The taking of a new lease where nothing is said as
to the fixtures is equivalent, it is said, to a surrender of the
premises as they exist to the landlord, and a taking of the prem·
ises from him in the same condition, which at the end of the
lease the tenant is bound to surrender. What can be said on
the other side of this question has been urged by Mr. Justice
COOLEY in *Kerr* v. *Kingsbury* (39 Mich. 150), and in *Second*

*National Bank* v. *Merrill Co.* (69 Wis. 501). See also title
" Fixtures," vol. 8, page 63, Am. & Eng. Enc. of Law. But
where there has been no acceptance of a new lease, and the
tenant has simply continued in possession after expiration of
his term, the better authority seems to be decidedly in favor of
his right to remove the fixtures while he remains in possession
in his character as tenant. (Taylor's Landlord and Tenant,
[8th ed.] § 551; *Penton* v. *Robart*, 2 East. 88; *Weeton* v.
*Woodcock*, 7 Meeson & Welsby, 14; *Dubois* v. *Kelley, supra*.)
*Penton* v. *Roberts* has been somewhat unfavorably criticised
in England, but the particular point in question has not been
directly overruled that I have seen. Although the plaintiff
was holding over subsequent to September, 1885, yet he was,
nevertheless, still in possession by reason of the original leas-
ing. And even in the case of *Loughran* v. *Ross* (*supra*),
Judge Allen says, the removal may be made so long as the
possession continues, although the term may have ended, if
there has been no new agreement. See also *Clarke* v. *Howland*
(85 N. Y. 204). There is no reason why the right should be
lost before he quits possession as tenant, even though he holds
over. The rule is based upon a question of public policy,
which suggests that the tenant shall remove during his term,
*i. e.*, while in possession as a tenant, whatever he has the right
to remove at all, so that the landlord may be himself protected
and so that the tenant shall not be permitted, after his sur-
render of possession, to enter upon the possession of the land-
lord or his succeeding tenant and remove what he might have
taken before, but which by leaving he has tacitly abandoned,
and which the landlord may already have let to his succeeding
tenant. A regard for such succeeding interests requires the
adoption of a rule necessitating the removal of fixtures during
the time of possession, but not in all cases during the running
of the term.

The last claim made by the defendant is that there was no
conversion of the property.

This, I think, falls with the finding of fact which, if the
question had been submitted to them, the jury might have

found that there was a waiver of the right to claim a forfeiture. The officers, who had the execution of the warrant of dispossession, refused to permit the plaintiff to remove the building, and this refusal was ratified by defendant, and the defendant still claims the right to retain it. The plaintiff again endeavored, after his dispossession, to remove the building, because of his being prevented by the agents of the defendant from removing it at the time he was dispossessed, but he was forbidden by the officers of the defendant from making any such attempt upon pain of instant arrest, and when he still made the attempt he was met and prevented by defendant from effecting the removal. The defendant has thus claimed the property as its own. It has refused to allow the plaintiff or his servants to remove it. The plaintiff was himself removed from the premises against his will by an officer with process, who refused to permit him to remove it. The claim and dominion made and exercised over the property by the defendant amounts to a conversion thereof. The Supreme Court has so decided in a very similar case at General Term reported in 12 Abb. Pr. 393 (*Moore* v. *Wood*). Judge BROWN wrote the opinion and the case was decided in 1860. I think it was correctly decided, and the principle applies here.

In this case the defendant has chosen to stand on what it has claimed to be its strict legal rights. It has claimed the forfeiture of a building worth $3,000 as the evidence shows, because at a certain day in September, 1885, the plaintiff owed it a balance of $150 out of a total rental of $2,000 for that season, and although such balance was paid long before the defendant took any measures to remove the plaintiff. It ought not to be a source of much regret that the right to enforce the forfeiture has passed away, and that the judgment which we must award is an absolute one in favor of the plaintiff. The defendant really loses nothing which it had any fair right to retain.

The order granting a new trial should be affirmed, and judgment absolute ordered for the plaintiff with costs.

All concur.

Judgment accordingly.