BENJAMIN DEBOBES, Respondent, *v.* JAMES N. BUTTERLY. Appellant.

First Department, June 6, 1924.

Landlord and tenant — action against president of corporation landlord for conversion of portable buildings alleged to be trade fixtures which president prevented tenant from removing — original lease provided for removal — original landlord was dispossessed and plaintiff became weekly tenant of defendant's corporation — plaintiff had right to remove trade fixtures — defendant is liable for conversion though acting as president of corporation — conversion shown.

A tenant who erects a portable building and other trade fixtures on the premises under a lease authorizing him to remove them at the termination of the lease, is entitled to remove the trade fixtures where, after entering upon the tenancy, the original landlord is dispossessed and the tenant thereafter becomes a tenant of a corporation under a weekly tenancy with a provision for the vacation of the premises on three days' notice.

The tenant had the right, during the period he was permitted by the corporation to remain, to remove the trade fixtures.

The president of the corporation, though acting for his corporation in preventing the tenant from removing the trade fixtures, may be held liable in an action for conversion.

It is not necessary in order to establish conversion to find a manual taking of the property or that it was applied to the use of the person who took it, but it is sufficient if the person charged with conversion exercised dominion over the property to the exclusion of and in defiance of the owner's right and, therefore, the defendant having prevented the plaintiff from removing the fixtures, which he had the right to remove at the expiration of the term, was guilty of conversion.

APPEAL by the defendant, James N. Butterly, from a determination and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of Bronx on the 14th day of June, 1923, affirming a judgment of the

Municipal Court of the City of New York, Borough of The Bronx, First District, in favor of the plaintiff.

*I. T. Flatto*, for the appellant.

*Meyer Levy*, for the respondent.

MARTIN, J.:

On the 3d day of March, 1920, the p'aintiff and William Debobes entered into an agreement with the Ward Exhibition Corporation, then the lessee of the Dyckman Oval property. The agreement permitted the sale and disposal of articles of food and drink, as well as tobacco, cigars and cigarettes, on the premises known as the Dyckman Oval for a period of one year commencing March 1, 1920, and ending February 28, 1921. It contained the following clause:

" *Eighth.* It is agreed that the licensees may have the right to install any necessary trade fixtures for the carrying on of the catering privileges and at the termination of this agreement the licensees shall have the right to remove the same."

It is asserted by plaintiff that the Ward Exhibition Corporation extended the license to the 28th day of February, 1922. The agreement contained a clause which provided as follows:

" *Eleventh.* It is further agreed that provided the licensees carry out their part of this agreement, that for any period after March 1st, 1921 and ending not later than March 1st, 1922, for which the lessor shall grant catering and skating privileges the licensees shall have the preference over other bidders offering the same amount on like terms."

During the month of December, 1920, or the month of January, 1921, a portable frame building and poles were erected by plaintiff on the property. Thereafter the Ward Exhibition Corporation was dispossessed, and plaintiff then became a tenant of the Carnival Palace Corporation under an agreement for a weekly privilege beginning the 18th day of December, 1921.

The plaintiff asserts that this arrangement continued for a period of seven weeks at a rental of fifty dollars a week. For the first week the privilege was granted in writing, and there was a clause that he would vacate the premises on three days' notice.

Several days before the privilege finally terminated the plaintiff unsuccessfully attempted to remove the portable building and other trade fixtures which he had erected on the property at an expense of about $750.

This action was then brought for the conversion of the property of plaintiff so placed on the premises for trade purposes. He established that the structure was portable and sectional; that it

had been bought by him; that he also erected ten wooden poles at a cost of fifteen dollars each; and that all this property remained on the premises from about December, 1920, to February 24, 1922, when he attempted to remove it and was prevented from doing so by the defendant. Plaintiff asserts that such attempted removal was during his tenancy and before the expiration or cancellation of one of the weekly terms.

The defendant conceded that the structure was constructed, erected and occupied by plaintiff personally, as testified to by him, and was of the character by him described, as appears from the following concession which is contained in the record: " The defendant concedes that the house in question was put up by the plaintiff, as described by the plaintiff, and was occupied by him as testified to by him."

It was also conceded that, if plaintiff's expert witness had testified, his testimony would have been that the value of the property at the time of the conversion was " equal in value to the amount sued for," and that the witness was fully qualified to so testify.

The plaintiff contends that he had a right to remove the trade fixtures placed upon the land as aforesaid. They were put there to facilitate the business of selling refreshments, to accommodate customers in an endeavor to conduct successfully the business permitted by the license. The defendant having allowed plaintiff to continue after the bankruptcy of the Ward Exhibition Corporation, plaintiff had the right, during the period he was permitted to remain, to remove his trade fixtures.

In *Lewis* v. *Ocean Navigation & Pier Co.* (125 N. Y. 341, 350) the court said: " The title of the landlord to fixtures which the tenant has left after the expiration of the term and after his delivery of possession, and which the tenant would otherwise have had the right to remove, is based upon the presumption of abandonment by the tenant to the landlord. No such presumption can attach so long as the tenant remains in possession. In *Loughran* v. *Ross* (45 N. Y. 792) it was held that where a tenant had a right to remove fixtures erected by him on the demised premises, yet if he accepted a new lease of the premises including such fixtures without reservation or mention of any claim to them, and entered upon a new term under the new lease, he lost the right of removal, even though his possession had been continuous. The decision in that case was placed upon quite technical reasoning, supported it is true by some authorities, but it is not one of those cases whose principle should be extended. The taking of a new lease where nothing is said as to the fixtures is equivalent, it is said, to a surrender of the

premises as they exist to the landlord, and a taking of the premises from him in the same condition, which at the end of the lease the tenant is bound to surrender. What can be said on the other side of this question has been urged by Mr. Justice COOLEY in. *Kerr* v. *Kingsbury* (39 Mich. 150), and in *Second National Bank* v. *Merrill Co.* (69 Wis. 501). (See also title ' Fixtures,' vol. 8, page 63, Am. & Eng. Ency. of Law.) But where there has been no acceptance of a new lease, and the tenant has simply continued in possession after expiration of his term, the better authority seems to be decidedly in favor of his right to remove the fixtures while he remains in possession in his character as tenant. (Taylor's Landlord & Tenant [8th ed.], § 551; *Penton* v. *Robart,* 2 East. 88; *Weeton* v. *Woodcock,* 7 Meeson & Welsby, 14; *Dubois* v. *Kelly* [10 Barb. 496].) *Penton* v. *Robart* has been somewhat unfavorably criticised in England, but the particular point in question has not been directly overruled that I have seen. · Although the plaintiff was holding over subsequent· to September, 1885, yet he was, nevertheless, still in possession by reason of the original leasing. And even in the case of *Loughran* v. *Ross (supra),* Judge ALLEN says, the removal may be made so long as the possession continues, although the term may have ended, if there has been no new agreement. (See also *Clarke* v. *Howland,* 85 N. Y. 204.) There is no reason why the right should be lost before he quits possession as tenant, even though he holds over. The rule is based upon a question of public policy, which suggests that the tenant· shall remove during his term, *i. e.,* while in possession as a tenant, whatever he has the right to remove at all, so that the landlord may be himself protected and so that the tenant shall not be permitted, after his surrender of possession, to enter upon the possession of the landlord or his succeeding tenant and remove what he might have taken before, but which by leaving he has tacitly abandoned, and which the landlord may already have let to his succeeding tenant. A regard for such succeeding interests requires the adoption of a rule necessitating the removal of fixtures during the time of possession, but not in all cases during the running of the term.''

In the *Lewis* case the lessees entered into possession of the premises under a lease and constructed a portable building for the purpose of conducting a restaurant and saloon, which, so far as appears, was entirely satisfactory to the defendant, the lessor. The building was erected so that it might be taken down and carried away. It was built on blocks buried about three feet in the sand, and upon these blocks posts were set and the sand placed against them.

. The defendant is president of the Carnival Palace Corporation,

the owner of Dyckman Oval. He contends that, because he is an officer of the corporation and was acting for it, he is not individually liable for a conversion. As an individual, even though acting for a corporation of which he is an officer, he may be held liable in an action for conversion.

In *McCrea* v. *McClenahan* (131 App. Div. 247) the court said: " This action was brought to recover damages for the conversion of certain goods concededly belonging to the plaintiff and left by him in the possession of the defendant David Stevenson Brewing Company, of which the defendant McClenahan was president at the time of the alleged conversion, and by whose personal action the conversion was consummated. Upon the trial, the learned justice presiding dismissed the complaint as to the defendant McClenahan, and upon the jury finding a verdict of $2,500 the same was set aside as being excessive. The plaintiff appeals from the judgment dismissing the complaint as to the defendant McClenahan.

" We are unable to discover any good reason for dismissing the complaint as against McClenahan. He was the president, and apparently in charge of the brewing company's business. It was he who refused to give up possession of the chattels concededly belonging to the plaintiff, his refusal being based upon an assumed right to a lien upon the same for storage. The tortious act was his own act, and the fact that he was also acting in behalf of the brewing company does not serve to relieve him from personal responsibility. (*Rodney Hunt Machine Co.* v. *Stewart,* 57 Hun, 545, 553.)"

In 14-A Corpus Juris, 175 (§ 1955), there appears the following: " A director, officer, or agent of a corporation is liable in damages for injuries suffered by third persons because of his torts, regardless of whether he acted on his own account or on behalf of the corporation and regardless of whether or not the corporation is also liable."

To establish conversion it is not necessary to find a manual taking of the property or that the defendant applied it to his own use. If he exercised dominion over it to the exclusion of and in defiance of the owner's right, he is liable for a conversion.

The defendant here prevented the plaintiff from taking away his portable house which he had the right to take away at the expiration of the term. He endeavored to remove it two days before the expiration of his lease.

In *Mahaney* v. *Walsh* (16 App. Div. 601, 604) the court said: " Conversion has been defined as follows: ' Conversion consists as a tort either in the appropriation of the personal property of another to the party's own use and benefit, * * * or in

exercising dominion over it in exclusion and defiance of the rights of the owner or lawful possessor * * * under a claim and title inconsistent with the owner's. The action of trover is founded on the right of property and possession, and any act of a party, other than the owner, which militates against this conjoint right in law, is a conversion. It is not necessary for a manual taking to make conversion, nor that the party has applied it to his own use. The question is, does he exercise dominion over it in exclusion or in defiance of the owner's right. If he does, that is conversion.' (4 Am. & Eng. Ency. of Law, 108.)

" This definition seems to be sustained by authorities. (*Boyce* v. *Brockway*, 31 N. Y. 490; *Caywood* v. *Van Ness* [74 Hun, 28; affd., 145 N. Y. 600].)"

The determination of the Appellate Term affirming the judgment of the Municipal Court is correct and should be affirmed, with costs.

CLARKE, P. J., MERRELL, FINCH and MCAVOY, JJ., concur.

Determination affirmed, with costs.