CLARENCE PRICE and Another, Respondents, *v.* FLORENCE EVANS, Appellant.

County Court, Oneida County, October 25, 1934.

*Searle & Searle*, for the appellant.

*W. Cullen Stevens*, for the respondents.

HAZARD, J.   The suggestion made by me some days ago that an amended return or stipulation be filed, giving some idea of the chronology of this case, has not up to date borne any fruit; but I have given to it considerable study and thought, and am now convinced that the question of whether the undertaking and the answer, setting up the plea that title to real estate comes into question, were filed simultaneously or not, is not absolutely of controlling importance.   It is true that section 173 of the Justice Court Act reads that the undertaking must be delivered to the justice " with the answer," and it is true that the language quoted might seem to mean *simultaneously*.   However, it does not necessarily mean that; and there seems to be no reason why that construction should be given to it.   I think after mature deliberation that what is really meant is that the two documents, the answer and the undertaking, are to be considered together, and that one is not complete without the other.   I can find, after exhaustive search, no case deciding this point one way or the other; but I do find three cases where it has been held that by " retaining " the undertaking, the justice was ousted of jurisdiction.   (*Harding* v. *Ellston*, 19 Civ. Proc. 252, 254; *Barnard* v. *Clark*, 33 Misc. 330, 332; *Manfredi* v. *Wiederman*, 14 id. 342.)

In this case the justice did very much more than " retain " the undertaking, because he *approved it*.   When he did that, it is my best judgment that he divested himself of jurisdiction in the case and should not have proceeded.   Any other ruling would, it seems to me, lead to rather absurd conclusions, for, as above stated, there is no *reason* to hold that the undertaking is a nullity unless it is handed to the justice or laid on his desk in front of him, at the identical moment that the answer is simultaneously so treated.   Can it be supposed that if the answer was filed at ten o'clock A. M., and the undertaking tendered during the afternoon, the latter is a nullity because, forsooth, it was not handed up at the identical moment the answer was filed?   If it could be filed a few minutes, or a few

hours afterward, why could it not be filed a few days afterward? I do not know what the fact is in this case, but I feel compelled to rule, especially upon the authority of the three cases above cited, that if the process was completed by the filing of the duly signed answer, and an undertaking, at any time before the trial was commenced, the justice's jurisdiction was thereupon ended, particularly and surely if the justice " retained " the undertaking and *approved it*, as he did in this case.

Much argument has been raised, orally and in briefs, about the lack of demand. It is true that, according to the return, no adequate demand was made. There can be no room for argument over the proposition that a demand for payment is not a demand for possession. Neither can there be any argument over the proposition that as a general rule a possession originally lawful cannot be changed into a wrongful possession without a demand. (*MacDonnell* v. *Buffalo L., T. & S. D. Co.*, 193 N. Y. 92, 101.) However, there is an exception to the rule, to the effect that when the defendant in possession unequivocally assumes acts of ownership and dominion over the property in question, then in such a case a demand is not necessary. (*Castle* v. *Corn Exchange Bank*, 75 Hun, 89, at p. 94; *Simon* v. *Simon*, 38 App. Div. 85, 87; *Bahr* v. *Boley*, 50 id. 577; *Moore* v. *Wood*, 12 Abb. Pr. 393, 395; *Lewis* v. *O. N. & P. Co.*, 125 N. Y. 341, 352; *Turner* v. *Cedar*, 91 N. Y. Supp. 758.)

In this case the defendant by getting an injunction, and again by opposing successfully the efforts of these plaintiffs to have it modified so far as they were concerned, beyond any doubt or argument, exercised dominion and control and proprietorship over the wood in question, and made a demand not only unnecessary, but futile. It is interesting to speculate on what could have happened had a demand been made, because even if defendant assented to plaintiffs' taking the wood, they could not have done it because of the injunction standing there. She had them all tied up; and a demand would have been the most idle and useless ceremony conceivable, and under the authorities cited, I think it was unnecessary.

However, notwithstanding that I am convinced, for the reasons outlined above, that a demand was not necessary, I think the appellant must succeed because the title to real estate, and the rights of several persons under conflicting claims, *did* come into question; and I think the answer interposed was sufficient to present that claim. (*Gould* v. *Patterson*, 63 Hun, 575.)

The answer said (¶ 3): " The title to real property will come into question in the action. That Edward A. Hurlbut was the owner in fee of the land and trees in question and plaintiffs' acts

were wrongful and without authority. That a person named Gross was occupying said real estate but had no right, power or authority to cut trees, destroy buildings or commit waste or make changes in the structures or real property thereon or allow or contract for the acts of said plaintiffs in the premises."

Gross was in possession of the farm under the land contract, Exhibit 1, and employed these plaintiffs to cut the timber in question. It is true the land contract was in process of foreclosure (probably when this contract was made); but there is not any proof that the plaintiffs knew of that fact, and perhaps it would not have made any difference if they did. So far as appears, they supposed they were dealing with the owner, and knew they were dealing with the person in possession. Doubtless the trees when cut " and severed from the realty " became personal property; but the question of the respective rights of Gross on the one side, and Hurlbut, or the defendant, on the other, does present what would seem to be a question affecting the title to real estate; or at very least the rights of two parties having conflicting interests in the real estate from which the trees were severed. I assume that up to the time the judgment was rendered and entered, Gross, under the contract, Exhibit 1, had an equitable title to the land. Doubtless Hurlbut (or the defendant) had some rights in that land, too. In fact, the record title was still vested in one or the other of them. (The date of Hurlbut's death does not appear.) The decision of the question of their respective rights, that is, as to whether Gross might cut timber, or whether Hurlbut or his successor might forbid it, is rather too serious a question for a decision in the average Justice's Court. I might express the guess that in the last analysis the answer might depend upon the mental operations of Gross in having the timber cut. She probably under the circumstances might not commit waste. On the other hand if what she said on the stand was true, and she was having the timber cut in good faith, to repair a barn on the premises, that could hardly be " waste;" but all this is rather heavy stuff for a lay justice of the peace to decide.

I am making this decision rather definitely against my fixed, and I assume rather well-known inclinations. I generally subscribe to the doctrine that the " laborer is worthy of his hire;" and I believe that debts should be paid. However, I am convinced that this action and the claim of the plaintiffs must be prosecuted somewhere besides in Justice's Court; and they may as well get started right at this stage of the case as at some other date and after more expenses are made.

Judgment of reversal may be prepared accordingly.