David Levy, J.
Sometime prior to June, 1974, Joan Delia advised the plaintiff that she and her husband, Bruno Delia, were putting up an apartment building in Riverdale and wanted plaintiff to furnish the model apartments. In June, 1974 plaintiff and the corporation signed a letter agreement which contained the following paragraph: "As we had discussed, Kin Post Realty Corp. will purchase the 'soft goods,’ * * * the upholstered furniture, carpeting, drapes, and lamps * * * at a special 20% builders discount. We will supply all the wood furniture on consignment. Title to all the furniture that will be supplied on consignment will remain in Sachs New York, Inc.. Kin Post Realty Corp., however undertakes to guarantee its safe-keeping and return in good condition less reasonable wear and tear.”
The three model apartments were furnished by February, 1974. In June, 1975 Joan Delia told plaintiff, in response to a demand for the hard goods, that she had sold some or most of them. The retail price of the hard goods not returned is claimed by plaintiff to be $4,507.63.
Plaintiff contends that the letter agreement was merely a *828 loan of the hard goods and that when the corporation sold the goods or did not return them on demand that it amounted to a conversion. Furthermore, plaintiff contends that since the defendant, Charles Delia, was president of the corporation and Joan Delia was secretary, that their participation in the sale and failure to return plaintiff’s hard goods upon demand, made them liable in conversion.
The individual defendants contend that the agreement was a consignment and not a loan and that they were authorized to sell the merchandise on behalf of the corporation and deduct a 20% commission and then were to remit the proceeds. Therefore, there was no conversion, but merely a debt of the corporation to plaintiff.
On this cause of action against the individual defendants as officers of the corporation, a difficult question is presented. Here, there is an attempt by plaintiff to hold the officers of a corporation liable for acts done as such officers, on behalf of the corporation. There is no claim that the proceeds of any sale of the "hard goods” were channeled in any way to the individual defendants.
The court finds that plaintiff has sustained its burden of proof by a preponderance of the evidence that the transaction was a "loan” of merchandise to the corporation and not a consignment and that title remained in plaintiff. Therefore, the sale of the merchandise by the corporation was a conversion. Still, the question remains are the officers also liable for a conversion under these circumstances.
The plaintiff relies heavily upon Independence Discount Corp. v Bressner(77 Misc 2d 714). In that case, plaintiff had a security interest in all of defendant’s future inventory and in all proceeds of the sale thereof. Defendant had the right to sell the inventory and was required to pay all amounts due immediately upon the sale of such inventory. The court held that the defendants were personally liable to plaintiff since they were the two principal officers and majority stockholders. This case has now been reversed on appeal. (Independence Discount Corp. v Bressner, 47 AD2d 756.) The court stated the rule to be applied (47 AD2d 756, 757, supra): "to establish a. cause of action in conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a speciñc identiñable thing and must show that the defendant exercised an unauthorized dominion over the thing in question” (emphasis added). Since there was no requirement of *829 segregation of funds but defendants could pay the amount due from any source, there was no specific fund from which payment had to be made, hence there could be no conversion. There was no right to a specific identifiable thing. There was no trust res.
The court also distinguished the case of Hinkle Iron Co. v Kohn (229 NY 179) where the court did find a conversion, by saying that there the president was obligated to turn over a portion of a "designated fund” which had been assigned to the plaintiff, but failed to do so and expended the fund on general corporate debts. The court found there was a trust res.
This leaves the question still open as to just when a corporate officer is liable for conversion absent a trust res or fiduciary obligation. At least one court has held that a trust receipt, which obligated a defendant to remit the proceeds when the item was sold, would render the officers liable. (Admiral Corp. v Cohen, 68 Misc 2d 687.) Here again a trust res can be found.
Other than the Independence case (supra), and the Admiral case (supra), there seems to be a dearth of recent cases concerning the liability of the officer of a corporation for a conversion when there is no trust res or fiduciary obligation, except for Heisler v Halberstam (74 Misc 2d 394), where an officer and stockholder converted corporate assets to his own use. Obviously, there an officer would be liable personally for transferring the assets of the corporation to himself in order to defraud creditors.
Nevertheless, there is a line of older cases that clearly states that an officer of a corporation is liable for his tortious acts of conversion and it is no defense that he did it on behalf of a corporation. (McCrea v McClenahan, 131 App Div 247; Passaic Falls Throwing Co. v Villeneuve-Pohl Corp., 169 App Div 727; Debobes v Butterly, 210 App Div 50.)
Under the circumstances the court finds that plaintiff has sustained its burden of proof by a preponderance of the evidence that the defendants, Joan Delia and Charles Delia, are individually liable in the sum of $4,507.63 for conversion of the "hard goods.”
Findings of fact and conclusions of law having been waived, I direct that judgment be entered in accordance with this decision.