ANGLO AMERICAN MILL COMPANY, Respondent, vs. WISCONSIN HYDRO-ELECTRIC COMPANY, Appellant, and CHETEK LIGHT & POWER CO., Interpleaded, Appellant.

*January 12—February 9, 1926.*

*Fixtures: Machinery in leased building: Character as between landlord and tenant: As between grantor and grantee: Notice to purchaser: Who bound to give.*

1. As between the lessee of a flour mill and the lessor, a roller mill installed therein and connected with the building in the usual manner retained the character of personal property where it was thoroughly understood that the lessee could remove it at the termination of the lease.  p. 123.

2. Where the roller mill, weighing nearly seven tons and adapted to the purposes of a flour mill, was installed and connected with the building by the usual conveyors, belts, and pulleys, and to all physical appearances constituted a part of the plant, title to the roller mill passed to the purchaser of the real estate in the absence of any notice to such purchaser that the roller mill was not owned by his grantor.  p. 124.

3. A tenant who places erections ·or machinery upon leased premises, which would be deemed realty as between grantor and grantee, and who surrendered possession of the premises at the end of the term without removing the improvements or making arrangements with the lessor as to their removal after the term, waives his right to remove them.  p. 125.

4. The lessee of the flour mill, having the right to remove the roller mill at the termination of the lease, by permitting it to remain on the premises after cancellation of the lease and thereby waiving his right of removal is *held* to have lost the right by laches to enter and remove it.  p. 126.

5. The owner of the realty was not bound to notify a purchaser as to the lessee's interest in the roller mill, the duty resting upon the lessee to give notice if he wanted to preserve his rights.  p. 127.

APPEALS from a judgment of the circuit court for Barron county: W. R. FOLEY, Circuit Judge. *Reversed.*

Action of replevin to recover possession of a roller mill. It appears that in 1919 the *Chetek Light & Power Company* executed a lease to one Edward Ludwig by which it leased to the said Ludwig for a term of five years a certain flour mill owned by it. The machinery in the mill was old and out of date, and it was provided in the lease that the said Ludwig might remove the old machinery and install in place thereof a Marvel Midget forty-barrel mill, and that at the termination of the lease he might remove the Marvel mill and reinstall the old machinery. Said Ludwig procured a Marvel mill from the *Anglo American Mill Company* under a conditional bill of sale contract, by the terms of which he agreed to pay as the purchase price of said mill the sum of $3,910 in instalments. He removed the old machinery and installed this Marvel mill in its place. The dimensions of the Marvel mill were six feet by eleven feet and it weighed 13,000 pounds. It was connected up with the building by the usual spouts and conveyors. Ludwig ran the mill until 1921, at which time he was considerably behind in the payment of his rent. It was then mutually agreed between him and the *Chetek Company* to cancel the lease, and said Ludwig thereafter gave the *Chetek Company* a mortgage on his farm for the rent and was told that he could remove the Marvel mill. He had no place to put it, and the *Chetek Company* consented to its remaining where it was in the mill building.

During the summer of 1922 the *Chetek Company* entered into negotiations with the *Wisconsin Hydro-Electric Company* for the sale of its electric light plant and equipment, including its flour mill. These negotiations were in progress until some time in November before any agreement was concluded between the companies. During this time the officers of the *Chetek Company,* by both oral and written communications, frequently advised Ludwig that negotiations were pending for the sale of the flour mill and that he had

better remove the Marvel mill, as they were uncertain as to what his rights would be in the event of a sale. However, Ludwig made no attempt to remove the mill. The negotiations between the *Chetek Company* and the *Hydro-Electric Company* culminated in a preliminary agreement of sale entered into in writing between the parties on the 27th day of November, 1922, by which the *Chetek Company* agreed to sell and convey to the *Hydro-Electric Company,* by usual and proper conveyances, its "flour and feed mill, hydro-electric power plant, transmission lines, distribution system," etc. On the 4th day of January, 1923, the *Chetek Company* executed and delivered to the *Hydro-Electric Company* a warranty deed conveying the lands and property described in the contract, and on that date the *Hydro-Electric Company* took possession. Neither the contract nor the deed made any reference to the Marvel mill nor was title thereto reserved. There was a sharp conflict in the evidence as to whether the *Chetek Company* advised the *Hydro-Electric Company* concerning Ludwig's ownership of the mill, but, if that fact be material, the trial court found that no such information was conveyed by the *Chetek Company* to the *Hydro-Electric Company,* and that the *Hydro-Electric Company* had no knowledge of Ludwig's right, title, or interest in and to said Marvel mill.

On July 6, 1923, Ludwig assigned to the plaintiff, the *Anglo American Mill Company,* all his right, title, and interest in and to said mill. Some time during the middle of August this action was commenced against the *Hydro-Electric Company* to recover possession of the mill. Upon motion of the *Hydro-Electric Company* the *Chetek Company* was made a party defendant. The *Hydro-Electric Company* filed a cross-complaint against the *Chetek Light & Power Company* praying judgment over against the *Chetek Company* in case judgment went against it in the replevin

action. The case was tried before the court without a jury, and judgment was rendered in favor of the plaintiff against the *Hydro-Electric Company* for the recovery of said mill or its value, fixed at $1,500, if possession could not be had. Judgment was also rendered in favor of the *Hydro-Electric Company* against the *Chetek Company* for $1,500. From this judgment the *Hydro-Electric Company* and the *Chetek Company* both appeal.

For the appellant *Wisconsin Hydro-Electric Company* there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy.*

*Roy P. Wilcox* of Eau Claire, for the appellant *Chetek Light & Power Company.*

For the respondent the cause was submitted on the brief of *J. W. Soderberg* of Barron.

OWEN, J. The only right which the plaintiff has to recover is that which it secured by the assignment from Ludwig. Its conditional-sale contract was not filed or placed on record, so that the *Hydro-Electric Company* had no notice of plaintiff's claim upon the mill by virtue of its conditional-sale contract, even though such filing would have constituted notice to a purchaser of the real estate that the mill was personal property and not a part of the freehold. A consideration of the case, therefore, involves only the right of the tenant, Ludwig, to recover possession of the mill. Undoubtedly as between Ludwig and the *Chetek Company* the mill maintained the character of personal property, as it was thoroughly understood and agreed between them that he might remove the mill upon the termination of the lease. However, it seems just as well settled that so far as an innocent purchaser of the premises was concerned, the mill, as to such purchaser, maintained the character of real estate, and title thereto passed with the conveyance. *Fuller-Warren*

*Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. In *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442 (169 N. W. 429), at p. 445 it was said:

"When machinery adapted to the purposes of a manufacturing plant is installed therein and connected with the building by wires or belts, such machinery becomes a part of the freehold, and the land, buildings, and machinery so attached constitute an entity and pass by deed, mortgage, or other conveyance of the land."

The situation under consideration responds to these specifications at every point. The mill was adapted to the purposes of the plant, it was installed therein and connected with the building by the usual conveyors, belts, pulleys, etc., it weighed 13,000 pounds, was placed in proper apposition to the drive shaft, and, to all physical appearances, constituted a part of the plant. Without this mill, or some similar mill, in position, the so-called flour mill would have been nothing but a mere building. From all physical appearances it was a part of the plant, and, in the absence of any notice on the part of a purchaser of the premises, title to the mill passed to the purchaser by virtue of the deed of conveyance. It seems beyond controversy that the *Hydro-Electric Company* took good title to the mill, free and clear of any rights on the part of the tenant, Ludwig, and that the judgment rendered against the *Hydro-Electric Company* is without justification or support in either fact or law.

While the issue is not really presented by the pleadings, in view of the fact that the *Chetek Company* is a party to the action, and issues could be readily framed to test its liability directly to the plaintiff, we deem it appropriate to consider whether the plaintiff has any rights of recovery against the *Chetek Company.*

The relations between the *Chetek Company* and Ludwig were clearly that of landlord and tenant. Ludwig took possession of the premises and installed therein the Marvel mill with the distinct understanding and agreement that at the

termination of the lease the mill could be removed. Thus as between Ludwig and the *Chetek Company* the mill clearly retained its character as personal property. However, the law is clear that even under such circumstances the mill became in a sense a part of the freehold, and the right which the tenant had was the right of removing the property at the expiration of his term. REDFIELD, J., in *Preston v. Briggs,* 16 Vt. 124, observed that "all fixtures for the time being are a part of the freehold, and that, if any right to remove them exist in the person erecting them, this must be exercised during the term of the tenant,—and if not so done, the right to remove is lost, and trover cannot be maintained for a refusal to give them up." This doctrine has been expressly declared by this court in the following language:

"It must be admitted that the rule established at law is that, if a tenant, having placed erections or machinery upon the leased premises during his term which would be deemed a part of the realty as between grantor and grantee, at the end of his term surrenders the actual possession of the leased premises to his landlord, without first removing such erections or machinery, and without obtaining the right to remove them from the landlord after the surrender, either by the terms of the lease or by agreement with the landlord at the time of the surrender, he waives his right to so remove the same, and they become the property of the landlord." *Second Nat. Bank v. O. E. Merrill Co.* 69 Wis. 501, at p. 512 (34 N. W. 514). See, also, *Fitzgerald v. Anderson,* 81 Wis. 341, 51 N. W. 554; *Hanson v. Ryan,* 185 Wis. 566, 201 N. W. 749.

After the lease was terminated between Ludwig and the *Chetek Company,* the Marvel mill still remained a part of the freehold,—the right of Ludwig to enter and remove the same still remaining by virtue of the separate agreement between Ludwig and the *Chetek Company* that the mill might so remain in the building and he might so remove it. The right of Ludwig, however, was the right to remove. This right was a precarious right so far as innocent purchasers

of the property were concerned.   It did not differ from any
other interest in real estate of which a *bona fide* purchaser
had no notice.   In permitting the mill to remain upon the
premises Ludwig took the chance of losing his right to re-
move it if the premises were conveyed, and this right he did
lose when the conveyance from the *Chetek Company* to the
*Hydro-Electric Company* was executed and delivered.   Full
and complete title to the mill was thereby vested in the
*Hydro-Electric Company,* and Ludwig's right to enter and
remove the mill at once ceased, just the same as an un-
recorded lien or incumbrance on the land would have been
extinguished.   Quoting again from *Second Nat. Bank v.
O. E. Merrill Co., supra,* at p. 513:

"It would seem that the reason upon which the courts
have based the rule that the tenant cannot re-enter and re-
move his fixtures after surrender of the possession under
his lease, is that such surrender is presumed to be intended
either as a gift of the fixtures to the landlord, or, if not a
gift, a waiver of any right to re-enter and remove them."

That Ludwig did intend to waive any right to re-enter
and remove this mill does not rest altogether in legal infer-
ence.   It seems quite probable that he deliberately abandoned
this mill to the company from which he purchased it.   He
owed a thousand dollars on the contract price.   He testified
he did not have any money with which to remove the mill,
and further:

"How I happened to give that assignment to the plaintiff,
there was a balance on the mill and I supposed they wanted
it—the mill or the money, so I didn't have nothing else but to
do that.   I just released whatever rights I had because I
hadn't paid yet the full price of the mill.   There was a
balance of about one thousand dollars yet due on that con-
tract."

This, we think, very satisfactorily explains the reason why
he did nothing in the way of removing the mill after he had

been advised by the *Chetek Company* that negotiations for a sale of the property were in progress.

It is contended that the *Chetek Company* should have notified the *Hydro-Electric Company* of Ludwig's interest in the mill. We know of no principle of law imposing any such duty upon the *Chetek Company*. Such a duty, however, did rest upon Ludwig if he wanted to preserve his rights in the mill. As observed by the Minnesota court in *Pabst v. Ferch,* 126 Minn. 58, 147 N. W. 714, L. R. A. 1915 E, 822:

"It is equally true, as a general rule, that a person, whether as tenant or otherwise, claiming some right or interest in or to real property, or to some part thereof, who stands by and permits a sale thereof by the holder of the legal title without making known his claim, is estopped thereafter to urge such claim as against the purchaser. He is precluded by his conduct from insisting upon his rights whatever. they may be."

It is clear that the interest of Ludwig in the mill constituted his right to enter and remove the mill from the premises, which right was lost through his own laches when the title to the property was conveyed to the *Hydro-Electric Company,* and that he has no claim against either the *Hydro-Electric Company* or the *Chetek Company* to recover either the mill or the value thereof.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss plaintiff's complaint.