DOMESTIC ELECTRIC COMPANY, INCORPORATED, APPELLANT, v. ALFRED MEZZALUNA, RESPONDENT.

Argued May 17, 1932—Decided October 17, 1932.

For the appellant, *Green & Green*.

For the respondent, *Azzoli & Krasney*.

The opinion of the court was delivered by

LLOYD, J. The action in this case was in replevin to recover certain portions of Frigidaire equipment sold to Corrado & Maturi under a conditional sales contract and which had been placed in an apartment house being constructed by the purchasers for the defendant, the replevin applying to the refrigerators, coils, compressors and cabinets and omitting certain equipment incident thereto, this latter admittedly forming an integral part of the building. The case was heard on a stipulation of facts and an opinion was filed together with findings of fact on which judgment in favor of the defendant was entered in the trial court and from which judgment the present appeal is taken by the plaintiff.

The defendant below, the owner of property in Irvington, contracted with Corrado & Maturi for the construction of a forty-family apartment house. This contract was filed of record and among its provisions was one calling for the installation of a frigidaire system, to be built in the apartment house. The contractor on March 21st, 1928, entered into an agreement with the Domestic Electric Company, plaintiff below, to build in and install this frigidaire system, receiving the bill of sale for the units of the equipment. Installation under the agreement began at once.

The building was completed and the owner paid the contractor the contract price, including the cost of the frigidaire

system. The Domestic Electric Company, however, never received payment from the contractor, and the building contract having been placed of record, no claim could be filed under the Mechanics' Lien act. The contract between the builder and the appellant provided that the equipment should be and remain the property of the appellant until paid for.

Contending that he is protected by the Uniform Conditional Sales act of 1919 (*Pamph. L., p.* 461), reliance is placed by appellant on section 7 of that act. This section reads as follows:

"If the goods are so affixed to realty, at the time of a conditional sale or subsequently as to become a part thereof and not to be severable wholly or in any portion without material injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed, as against any person who has not expressly assented to the reservation. If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof, but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value, and without notice of the conditional seller's title, unless the conditional sale contract or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of the realty would be recorded or registered to affect such realty. As against the owner of realty the reservation of the property in goods by a conditional seller shall be void when such goods are to be so affixed to the realty as to become part thereof, but to be severable without material injury to the freehold, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are to be affixed thereto, shall be filed before they are affixed, in the office where a deed would be recorded or registered to affect such realty."

So much of the section as is intended to protect purchasers has no application to the present case, but it is obvious that the respondent owner comes within the purview of its other provisions.

The contract between the builder and appellant called for the placing of risers or pipes running through the walls of the building, two compressors in the cellar, each for sixteen apartments, and ice boxes in the individual apartments. This contract was filed in the office of the register of Essex county on April 5th and was recorded by the clerk in the mortgage book instead of in the conditional sales book as required by the tenth section of the act, and was accompanied by a statement reading as follows:

"Frigidaire installations in the apartment house located at 749-755 Chancellor avenue, Irvington, Essex county, New Jersey, Block No. 64A, lot number 13.

The equipment is in no way attached to the realty and is severable without material injury to the building.

DOMESTIC ELECTRIC Co., INC."

The installation of the risers was begun at once, upon the making of the contract. The remaining equipment was delivered May 31st, and installation completed on June 27th.

The learned trial judge to whom the case was submitted without a jury, reached the conclusion adverse to the appellant on the ground that the statement was not a compliance with the filing provision of the act, and that in any event it was not recorded in the proper book to give notice to the owner. The statement was in substance of doubtful compliance with the statute, and it is quite certain, in the view we take of the fundamental nature of the contract, that neither the contract nor the statement were filed before the goods were affixed to the realty. The failure to record in the proper book, however, was the failure of the register for whose default the plaintiff could not be held responsible. *Teweles* v. *Clearance Holding Corp.*, 156 *Atl. Rep.* 447.

Our conclusion to affirm, however, rests on a broader ground and that is that the goods were so affixed to the realty as to become a part thereof, and not removable without material injury to the freehold.

Counsel for the appellant has exhibited much ingenuity and research in bringing to the court's attention a long line of decisions respecting the status of attached fixtures at common law, and has deduced therefrom that the true rule that has emerged is that the intent of the parties at the time must be controlling.

We think that this contention is unsound. The Uniform Conditional Sales Contract act by its very terms makes the solution in each case determinable upon a question of fact when the rights of those other than the immediate contracting parties are concerned. The specific declaration of the act to this effect is too clear to admit of question.

Construing the statute in this way we have here a large building intended for the use, presumably by rental, of numerous separate units by individual tenants or occupants. As an integral part of this construction a system of refrigeration available to each unit and dependent upon a central system is contracted for and constructed. This includes not only the individual unit but basic parts in the construction of the walls of the building itself. It is under an entire contract calling for construction, and it is impossible to separate the different portions of the equipment one from another and say that this is detachable and this is not, but the system must be considered as a whole. While the appellant might remove portions of the equipment without physical damage to the property, considered merely as real property, it could not do so without wholly destroying the system considered as part of the building as an apartment house.

Refrigeration in this day of advanced domestic housekeeping is almost as essential in the home as gas ranges or other cooking appliances and heating equipment. Vice-Chancellor Backes in the case of *Future Building and Loan Association* v. *Mazzocchi,* 107 *N. J. Eq.* 422, makes these observations:

"When it is considered that the refrigerators and gas ranges are part of the plant of an apartment house, and that the building, as an apartment house, cannot function without them, it may well be doubted that they are removable without material injury to the freehold * * *. They are no more removable without material injury than would be the carrying away of the front door, although the unhinging of the door would be less difficult. The word "material," as used in the statute, in one sense means material injury to the structure, but it also connotes injury to the institution of which the structure is a part."

We think this view expresses the purpose and meaning of the statute. If the equipment were a heating plant comprising boilers, heaters, piping and radiators, it would hardly be contended that the pipes, radiators or other essential parts of the heating system could be separated from the whole and removed without material injury to the freehold. So here, the parts replevied were so affixed to the realty as to become a part of a plant essential to the functioning of the apartment building of which they were a part and not severable either in whole or otherwise without material injury to the freehold, and for this reason the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.