NORTHWESTERN LOAN & TRUST COMPANY and another, Respondents, vs. TOPP OIL & SUPPLY COMPANY, Appellant.

*April 13—May 9, 1933.*

490

492

For the appellant there were briefs by *Mayer, Wilde & Haertle,* attorneys, and *Walter F. Mayer* and *James D. Porter* of counsel, all of Milwaukee, and oral argument by *Mr. Mayer.*

For the respondents there was a brief by *Kearney, Kearney & Koelbel,* and oral argument by *Elmer D. Goodland* and *Thomas M. Kearney, Jr.,* all of Racine.

FOWLER, J. There can be no question that the building and equipment were so attached to and so used in the operation of the business conducted on the premises as to become a part of the realty. *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465; *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429; *Anglo American M. Co. v. Wisconsin Hydro-Elec. Co.* 189 Wis. 120, 207 N. W. 276; *Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. Being a part of the realty, they belong to the owner of the fee, unless there be a rule of law applicable between landlord and

tenant under the facts of the case that vests the property therein in the lessee.

The appellant bases its claim of ownership upon the rule quoted from *State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 221, 164 N. W. 1009:

"In the absence of express stipulation to the contrary the general rule is that improvements made by a tenant on demised premises in furtherance of the purposes of the lease may be removed by him before or at the expiration of the term, provided he leaves the premises in as good condition as he received them."

We recognize this as a correct statement of the law. It is to be noted, however, that it is a general rule, and a general rule is subject to exceptions where special circumstances render its application inequitable and unjust. It is to be noted also that to render the rule applicable the lessee must leave the premises in as good condition as they were when he received them. The reason for the proviso is that the lessor shall receive the premises back in the same condition that they were in when he executed the lease. When this lease was executed a dwelling house was on the premises, which the lessor was required by the terms of the lease to remove, and which she did remove at an expense of $650. To restore the premises to the condition which they were in when the lease was executed the dwelling house would have to be moved back, at a presumptive expense of at least $650 more, the trees and shrubbery and lawn would have to be replaced at an additional expense, the amount of which does not appear. It is true that when the lessee actually took possession of the premises there was no dwelling house upon it, but to allow the lessee the benefit of the rule as strictly stated would ignore the reason of the rule entirely, and when the reason of a rule does not apply neither does the rule. Moreover, it does not appear that it is possible to restore the lessor to the position she was in when the lease was executed. Ar-

rangements may have been and doubtless were made that cannot be unmade, and the lessee is not offering and claims it is not obliged to unscramble the lessor's eggs. The finding of the trial judge that removing the improvements would work irreparable injury to the plaintiff is justified. Under the circumstances involved we must hold that the general rule as stated is not applicable to the instant case.

The appellant claims that *Shields v. Hansen,* 201 Wis. 349, 230 N. W. 51, rules the instant case. To this we cannot agree. While the improvement which the defendant in that case was permitted to remove was made for the same purpose as the one involved herein, the instant case is clearly distinguishable in that the leased premises there involved were vacant; it was not a valuable leasehold; the original lease was oral and the parties agreed that the defendant might remove the improvement on its termination; the lessor did not pay the taxes on the improvement; on removal of the building and concrete slab, "refilling the excavations" left the premises "in the identical condition that they were in when they were leased" (p. 352); the building was of wood covered with stucco, bolted onto a concrete slab, without basement, and was built with especial view to its removal; the lease was a short-term lease, originally oral, and after four years' occupation under it was put in writing for three years at increased rental. Every case must stand on its own facts. The facts here involved are widely different, as appears from the statement thereof preceding the opinion.

The case of *Dougan v. H. J. Grell Co.* 174 Wis. 17, 182 N. W. 350, is also relied on by the appellant. It may also be distinguished by its facts. Two leases were involved. The one of them the more nearly approaching the instant case in its facts leased for ninety-nine years a strip of farm land forty by one hundred ninety-five feet at a nominal annual rental of five dollars. The premises were to be used for no other purposes than operating a cheese and butter

factory and the lease granted "the privilege of erecting buildings thereon" suitable for the purpose. The buildings erected were assessed as personal property and the lessee paid the taxes. An injunction against removal was denied. The facts herein are sufficiently different in our view to warrant a different judgment.

It may be said further in support of the judgment below that the terms of the lease warrant the construction that as part of the consideration therefor the lessee agreed to construct a filling station on the leased premises. While the language is that the lessee "may construct its filling station," it also states that the filling station "shall be completed not later than" a specified date. Counsel argue that the word "its" indicates that the building was to belong to the defendant and that this would give the defendant the right of removal, and that the word "may" indicates that the defendant was under no obligation to build. But these words are no more forceful to this effect than are the words "shall be completed" to indicate the contrary. The lease was drawn by the lessee, and if ambiguous, as we think it is, that construction should be given that is most favorable to the lessor. *Milwaukee Corrugating Co. v. Krueger,* 184 Wis. 139, 151, 198 N. W. 394. It is highly improbable that the lessor, in executing a lease subject to termination in five years, would have agreed to remove the dwelling house unless the lessee would construct a valuable and substantial improvement to take and remain in its place. If the improvements were removed the consideration for the execution of the lease would in part fail. It is to be noted that the expressed consideration for the lease was not the payment of rents, but one dollar, which leaves the matter of consideration open to inquiry and determination. It seems quite apparent that the lessor understood that the improvements were to remain. Her intent in that respect seems clear. The trial court found that the intention of the parties was "that the improvements

covenanted to be erected" on the premises and which were erected thereon "were to be and become a part of the realty." This implies that they should so remain. The lease in view of its terms and all the circumstances is open to that construction.

We are of opinion that the court's disposition of the case was correct. As the lessor's grantee has right to retention of the improvements, we see no reason to discuss the rights of the plaintiff mortgagee.

*By the Court.*—The judgment of the circuit court is affirmed.

NELSON, J. (*dissenting*). As I am unable to concur in the majority opinion I shall state briefly the reasons which impel me to dissent.

This controversy involves the claims of the parties to a certain filling station erected upon the lands of Carrie E. Pedersen by the defendant as specifically authorized by a certain lease. The plaintiff, as trustee, stands in the shoes of Mrs. Pedersen and concededly the conveyance of the lands in trust for her own benefit does not alter the situation to be dealt with. Under the lease the relation between Mrs. Pedersen and the defendant was that of landlord and tenant. It has very recently been held that a gasoline filling station when constructed upon leased lands is a trade fixture and is removable by the tenant at the expiration of the term. *Shields v. Hansen,* 201 Wis. 349, 230 N. W. 51. If the law of that case is good law I think it ought to be followed rather than distinguished. The majority opinion distinguishes the *Shields Case* by saying that the leased premises there involved were vacant and were not a valuable leasehold; that the parties agreed that the defendant might remove the improvement upon the termination of the lease; that the lessor did not pay the taxes on the improvement; that the premises were restored to the condition they were in when leased;

that the building was of wood covered with stucco bolted to a concrete slab, without basement, and was built with a special view to its removal, and that the lease was a short-term lease. In my view, these facts do not distinguish the *Shields Case*. Both buildings were of substantially the same size although of different construction, both were in fact filling stations. The lands involved in both were vacant when the lessees entered into possession. Fixtures are not determined by the value of the leaseholds to which they are attached. The question as to the payment of taxes is without significance. The premises involved in this action can be restored to the condition they were in when delivered over to the defendant. The fact that in this case there is a sort of basement which houses the heating apparatus does not afford a basis for distinguishing the *Shields Case*. A trade-fixture building is none the less such because there is a little basement under it. The basement hole or excavation would simply have to be filled in by the tenant to the end that the property might be restored to the condition it was in when possession was delivered.

In my view, this case is ruled by the law of trade fixtures as it has often been applied to situations involving the relation of landlord and tenant. From an early day this court has consistently stood for a liberal policy with respect to the rights of tenants to remove trade fixtures at the end of their terms. *Corcoran v. Webster,* 50 Wis. 125, 6 N. W. 513; *Walker v. Grand Rapids F. M. Co.* 70 Wis. 92, 35 N. W. 332; *Second Nat. Bank v. O. E. Merrill Co.* 69 Wis. 501, 34 N. W. 514; *Rinzel v. Stumpf,* 116 Wis. 287, 93 N. W. 36; *E. M. Fish Co. v. Young,* 127 Wis. 149, 106 N. W. 795; *Brobst v. Marty,* 162 Wis. 296, 156 N. W. 195; *State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 164 N. W. 1009; *Hanson v. Ryan,* 185 Wis. 566, 201 N. W. 749; *Dougan v. H. J. Grell Co.* 174 Wis. 17, 182 N. W. 350; *Shields v. Hansen, supra.*

It is moreover the established law of this state that a tenant needs no express stipulation in a lease to give him the right to remove fixtures at the end of his term. *State ex rel. Hansen S. Co. v. Bodden, supra; Dougan v. H. J. Grell Co., supra; Shields v. Hansen, supra.*

At the time this lease was entered into the defendant had the right to rely on the well established law of the state and to rest secure in the belief that it was not necessary to preserve its rights to remove trade fixtures at the end of its term by specifically so stipulating in its lease. In *Dougan v. H. J. Grell Co., supra,* a large building and the machinery and equipment therein, erected and installed upon lands held under a ninety-nine-year lease, were held to be removable. In *State ex rel. Hansen S. Co. v. Bodden, supra,* a large warehouse which cost $20,000 was held to be removable by the tenant, and such holding was the basis of the court's determination that the building was taxable as personal property. In *Shields v. Hansen, supra,* it was specifically held that that particular filling station was a trade fixture and was removable by the tenant.

The trial court found that the defendant did not reserve in its lease the right to remove the improvements at the expiration of the term, nor did it covenant and agree to restore the premises to the condition in which they were at the time of entry thereon, at the expiration of its term; and that because of the premises the intention of the parties at the time the lease was entered into was that the improvements covenanted to be erected thereon and actually erected thereon by the defendant were to be and become a part and portion of the realty embraced in and covered by said lease. Under the well established law of this state the fact that the tenant did not reserve the right to remove trade fixtures at the expiration of its term is without significance, since, in the absence of such a stipulation, that right is given to the tenant. The fact that a tenant does not agree to restore the

premises to the condition in which they were at the time of entry is also without significance since it is the duty of a tenant, upon removal of trade fixtures, without stipulation, so to do. That no agreement was written into the lease does not tend to show an intention permanently to affix but rather a contrary intention.

It is undisputed that no mention was made of the rights of the defendant to remove the improvements at the end of its term. There was no oral agreement to that effect. Mrs. Pedersen agreed to pay the taxes, but that fact is without particular significance. There are undoubtedly thousands of leases in existence under the terms of which the landlord pays the taxes. In my view, payment of taxes by a landlord is without significance on the question of the right of the tenant to remove trade fixtures at the end of his term.

There can be no question that a filling station would have to be held a fixture which would pass to a grantee or mortgagee without notice under the law of this state. *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465; *Anglo American Mill Co. v. Wisconsin Hydro-Elec. Co.* 189 Wis. 120, 207 N. W. 276; *Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698,—cited in the majority opinion. However, we are not here dealing with the law of fixtures as it relates to grantor and grantee or mortgagor and mortgagee.

It is well established that as between a grantor and grantee or mortgagor and mortgagee, a liberal rule in favor of the grantee or mortgagee exists, as to his rights to claim fixtures. It is equally well established that as between a landlord and tenant a liberal rule exists in favor of the tenant. See cases hereinbefore cited. In none of the four cases just cited were the rights of a tenant to remove fixtures involved.

As before stated, there was no agreement between the parties respecting the rights of the parties to the filling station upon termination of the lease. No act of the defendant in-

consistent with its asserted right to remove the station was proven. The defendant expended over $5,000 for the improvements, which amount it set up on its books as a capital asset. The lease specifically referred to the improvements to be made as "its filling station" and the defendant caused the filling station to be insured. Can it be said with any justification that at the time the improvements were affixed the defendant intended that the improvements should belong to Mrs. Pedersen at the termination of the lease?

It is, of course, undisputed that at the time the defendant was negotiating for a lease the particular site was occupied by a residence which Mrs. Pedersen thereafter removed at her expense. That fact no doubt tends to make this case appear to be "a hard case." That fact, however, in my opinion, should not be permitted to upset the law which gives tenants the right to remove trade fixtures in the absence of an agreement to the contrary. The site leased was actually vacant ground at the time possession was given to the defendant although it was not vacant at the time the lease was made. In my opinion, the fact that there was a house on the lands at the time the lease was made should not be given the controlling influence or weight which the majority opinion gives it.

The majority opinion makes no distinction between the building and the gasoline pumps, air-compressor, etc., which are easily removable. It applies without discrimination the law of fixtures to everything and gives to the plaintiff property which cost the defendant over $5,000. In my opinion, the majority opinion is out of line with the established law of this state. I think the case should be reversed.