PEOPLE'S SAVINGS & TRUST COMPANY, Trustee, Plaintiff and Appellant, vs. SHEBOYGAN MACHINE COMPANY and others, Defendants and Respondents: MUNSERT, Receiver, Defendant and Appellant.

*February 8—October 10, 1933.*

For the appellant People's Savings & Trust Company as trustee there were briefs by *Otto P. Lehner* of Green Bay; by *Bagley, Spohn, Ross & Stevens* of Madison, attorneys for the intervening defendants; and by *V. J. O'Kelliher* of Oconto, attorney for the defendant and appellant W. J. Munsert as receiver, and oral argument by *Mr. O'Kelliher*.

For the respondents there were briefs by *Allan V. Classon* of Oconto, attorney, and *Werner & Clemens* of Sheboygan, *White & Hawxhurst* of Chicago, Illinois, and *Fredric W. Crosby* of La Crosse of counsel, and oral argument by *Mr. Classon* and *Mr. Matt Werner*.

The following opinion was filed June 29, 1933:

NELSON, J. The principal facts are not in dispute. On June 1, 1927, Great Northern Pail Company executed a deed of trust or mortgage on its real estate, buildings, machinery, and equipment comprising an industrial plant located in the village of Gillett, to Seymour State Bank, as trustee, to secure a bond issue of $95,000. The mortgage covered the buildings, machinery, equipment, fixtures "and other tangible property now or hereafter located upon said real estate." The bonds secured by the trust deed were issued and sold. On October 15, 1928, Seymour State Bank resigned as trustee, and People's Savings & Trust Company was appointed as trustee in its stead. The Pail Company, mortgagor, was succeeded by Northern Manufacturing Company. On November 1, 1928, the Pail Company entered into a conditional sales contract with J. J. Nartzik, Inc. for the purchase of certain machinery and equipment described as one Coe veneer dryer, one Capital veneer hog, and one Smalley bolting saw. The contract was filed with the village clerk on December 5, 1928, but no description of the real estate was appended thereto. On November 27, 1928, the Pail Company entered into a conditional sales contract with Sheboygan Machine Company for the purchase of one Sheboygan veneer jointer and one Cutter grinder. The contract was filed with the village clerk December 28, 1928, but no description of the real estate was appended thereto. On December 28, 1928, the mortgagor purchased of Globe Automatic Sprinkler Company under a conditional sales contract a wet and dry fire-extinguishing system. This con-

tract was filed with the village clerk on June 2, 1929. It had a description of the real estate appended thereto. All of the machines and equipment were installed in the plant and affixed to the realty. Several lien claimants who, as principal contractors, had furnished materials and supplies to the mortgagor, subsequent to the date of the recording of the trust deed, filed claims for liens, and in actions brought to foreclose them sought to obtain priority to the trust deed. Some of the claims for liens were for materials and supplies furnished prior to the dates of the conditional sales contracts and some of them were for materials furnished subsequent to the dates of said contracts. The trial court held that the plaintiff was entitled to a judgment of foreclosure and sale; that the claims for mechanics' liens were subordinate to the trust deed, and that both the trust deed and the claims for liens were subordinate to the rights of the conditional sales sellers to remove their several properties from the plant. The trustee under the trust deed, the receiver of Northern Manufacturing Company, successor to the mortgagor, and certain holders of bonds appealed from so much of the judgment as authorized the conditional sales sellers to remove their properties.

The sole question for determination is whether the defendants J. J. Nartzik, Inc., Sheboygan Machine Company, and Globe Automatic Sprinkler Company, sellers of the machinery, etc., hereinbefore described, may retake their properties which were sold, delivered, and installed pursuant to conditional sales contracts as against the trustee under a prior deed of trust, the trustee, as assignee of the claims for mechanics' liens, certain holders of the bonds secured by the trust deed, and the receiver.

It is contended by appellants that under the well established law of this state the several machines, by virtue of their actual physical annexation to the realty, their adaptability to the use and purposes to which the realty is devoted,

and the intention of the parties to make a permanent accession to the freehold, were fixtures and as such were subject to the mortgage. Citing *Taylor v. Collins,* 51 Wis. 123, 8 N. W. 22; *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465; *State ex rel. Gisholt Machine Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429; *Anglo American Mill Co. v. Wisconsin Hydro-Electric Co.* 189 Wis. 120, 207 N. W. 276; *Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439, and numerous other decisions found in our Reports.

That the machines and equipment were fixtures which would pass to a purchaser of the real estate without notice, or which would be subject to the lien of a subsequent mortgage without notice, is, under our decisions, entirely free from doubt; but we are not here dealing with the right of a subsequent purchaser or mortgagee without notice to claim the machines in question. Moreover, in the view we take of this controversy, it is not ruled by the law of fixtures but by the law of conditional sales contracts; and consequently the well established common law applicable to fixtures has, in our opinion, little to do with this controversy.

By ch. 672, Laws of 1919 (secs. 122.01 to 122.31, Stats.), the legislature adopted the Uniform Conditional Sales Act. Sec. 7 of the Uniform Conditional Sales Act is as follows:

"If the goods are so affixed to realty, at the time of a conditional sale or subsequently as to become a part thereof and not to be severable wholly or in any portion without material injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed, as against any person who has not expressly assented to the reservation. If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract,

or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of the realty would be recorded or registered to affect such realty. As against the owner of realty the reservation of the property in goods by a conditional seller shall be void when such goods are to be so affixed to the realty as to become a part thereof but to be severable without material injury to the freehold, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are to be affixed thereto, shall be filed before they are affixed, in the office where a deed would be recorded or registered to affect such realty."

Sec. 122.07, Stats., is identical with sec. 7, above quoted, except as to the provision in the third sentence relating to the place of filing. Sec. 7 of the Uniform Conditional Sales Act, hereafter simply called sec. 7, contains three sentences each of which obviously applies to a different situation. The first sentence relates to conditional sales of goods which are affixed to realty so "as to become a part thereof and not to be severable wholly or in any portion without material injury to the freehold," and provides that as to such goods, after they are so affixed, the reservation of property as to any portion not so severable shall be void as against any person who has not expressly assented to the reservation. The second sentence relates to conditional sales of goods which are affixed to realty so as to become a part thereof "but to be severable without material injury to the freehold," and provides that as to such goods after they are so affixed reservation of property therein shall be void as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract, or a copy thereof, etc., shall be filed before such purchase, etc. It is clear that the purpose of the second sentence of sec. 7 is to protect subsequent pur-

chasers of the realty for value and without notice of the conditional seller's title to property affixed thereto, for it specifically provides that "the reservation of property shall be void as against subsequent purchasers" (which include mortgagee and pledgee). Sec. 122.01 (8).

The third sentence relates to the reservation of property in goods to be so affixed to the realty as to become part thereof but to be severable without material injury to the freehold, and provides that as "against the owner of realty such reservation by a conditional seller shall be void, unless the conditional sale contract or a copy thereof, etc., shall be filed before they are affixed, in the office," etc.

It is clear that the present controversy is not governed by the second sentence of sec. 7, since the rights of a prior, not a subsequent, mortgagee are here involved. It is also clear that this controversy is not governed by the third sentence of sec. 7 when the meaning of the language contained therein is ascertained and its true intent discovered.

With reference to the situations to which the third sentence is applicable, Professor George Gleason Bogert, a member of the Commission on Uniform Laws, draftsman of the Uniform Conditional Sales Act, and author of Commentaries on Conditional Sales, Uniform Laws Annotated, vol. 2A, states in said Commentaries (p. 103) :

"Often the conditional sale of the goods to be attached to the realty is made to a contractor who is to annex the chattels to the land of his employer. Here the conditional buyer does not own the land to which the goods are to be attached. The buyer intends to, and does, attach the goods to another's real property, and that other pays the contractor for his labor and materials. Is the owner of the building in the position of a *bona fide* purchaser from the contractor? It has been held quite generally that such owner is entitled to the same measure of protection that a subsequent *bona fide* purchaser of the land would get, either under a recording act or without one. On that theory in the fol-

lowing cases the owner of the building was favored over the conditional seller" (citing numerous cases).

It seems plain that where an owner of realty purchases goods from a seller under a conditional sales contract, which goods are to be affixed to the realty but are severable without material injury to the freehold, there is no reason or necessity for filing the contract before the goods are affixed. In such a case the goods are purchased by the owner with full knowledge of the title reserved in the seller until they are paid for, and obviously there is no reason for giving to the owner, who is a party to the contract, the additional constructive notice which the record would give.

This controversy, therefore, is governed by the first sentence of sec. 7 (sec. 122.07, Stats.) as found by the trial court.

In the law of fixtures physical annexation, adaptability to the use and purpose to which the realty is devoted, and the intention of the parties are of vital concern. In the law of conditional sales contracts under the first sentence of sec. 7, the question is: May the goods conditionally sold and affixed to the realty be severed therefrom "wholly or in any portion without material injury to the freehold?" The important words are obviously "without material injury to the freehold." The construction to be given those words determines this controversy. In a sense, whenever goods are affixed to the realty their subsequent severance and removal causes material injury to the freehold as it then exists, but in our opinion this is not the sense in which such words were used. If that were the meaning to be given them, a seller of an article which is to be affixed to the realty under a conditional sales contract would run considerable risk in selling even a gas range to a householder, a windmill to a farmer, or any machine of substantial importance to a manufacturing plant under such a contract because the severance

of a gas range from a house, a windmill from a farm, or an important machine from a factory might be found to result in material injury to the freehold as of the time of severance. We think the language should not be so construed. One of the purposes of sec. 7 is to protect conditional sales, not to thwart or prevent them.

Acts of the legislature should be construed according to common and approved usage. Sec. 370.01, sub. (1), Stats. The Uniform Conditional Sales Act, however, though adopted by the legislature, was not in fact framed by it. The act was drafted by the Commission on Uniform Laws, submitted as drawn to the legislature, and adopted by the latter without amendment. In construing a uniform law the meaning of which is not clear, the intention of those who drafted it, if that intention may be ascertained, should be given controlling consideration, else the desired uniformity will not result. Futile indeed is the passage of uniform laws by the several states if the courts are to construe them differently. Uniform acts contain provisions similar to sec. 122.30, which provides:

"This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." *Forgan v. Smedal,* 203 Wis. 564, 234 N. W. 896.

So far as the first sentence of sec. 7 is concerned, there is little excuse for failing to ascertain the real intention of those who drafted it. In the preface to Commentaries on Conditional Sales (*supra*), Professor Bogert states:

"There have also been inserted after the sections of the Uniform Act, comments on the purpose and theory of that statute as gathered from discussions in committee and in the Conference on Uniform State Laws."

Professor Bogert, in sec. 66 of vol. 2A, refers to certain cases dealing with goods so closely incorporated or united

to land as to lose their legal existence or identity, and then states:

"The common law has long recognized that goods may be so closely united to land or so closely attached to it that no one will be allowed to assert that they any longer have any legal existence separate and distinct from the land. They are swallowed up or drowned in the realty," citing *Detroit Steel Cooperage Co. v. Sistersville Brewing Co.* 233 U. S. 712, 34 Sup. Ct. 753; *In re Seward Dredging Co.* 242 Fed. 225, 155 C. C. A. 65; *Holt v. Henley,* 232 U. S. 637, 34 Sup. Ct. 459; *Landigan v. Mayer,* 32 Oreg. 245, 51 Pac. 649.

After referring to the holdings in the cases just mentioned Professor Bogert states:

"The first sentence of sec. 7 is intended to perpetuate this common-law doctrine that there are limits to the powers of seller and buyer with respect to reservation of title to fixtures conditionally sold. They may not, as far as persons who have not consented to the reservation are concerned, agree for the reservation of title to an article which is so closely attached to or incorporated into the land as to lose its identity. The test of such close incorporation is that 'material injury to the freehold' will result if the chattel is removed. This phrase will doubtless be construed as continuing in force the doctrine stated in the preceding paragraph regarding attachment of such a character as to cause the chattel to become irrevocably a part of the land, regardless of filing. To expect a purchaser of land to look for a conditional sale contract reserving title to the seller in bricks built into a house, would be unreasonable."

It seems clear from this that there ought to be no serious question as to what the intention of the framers of the first sentence of this act was, nor as to the purposes sought to be accomplished.

In spite of the fact that Professor Bogert, in his Commentaries, has so clearly stated the situation to which the first sentence of sec. 7 is applicable, the purposes to be accomplished by it, and the underlying reasons therefor, the courts of this country are already in conflict.

In *Future Building & Loan Asso. v. Mazzocchi,* 107 N. J. Eq. 422, 152 Atl. 776, it was said by way of *obiter* with reference to certain refrigerators and gas ranges there in controversy and with reference to the first sentence of sec. 7:

"Under the first sub-provision of that section, material injury resulting from detaching fixtures determines the nature of their property here. The intention with which they were affixed becomes secondary. Material injury in detaching, not intention in attaching, is the test. Now, when it is considered that the refrigerators and gas ranges are part of the plant of an apartment house, and that the building as an apartment house cannot function without them, it may well be doubted that they are removable without material injury to the freehold as against a mortgagee which advanced its money in contemplation of a completed structure. See *General Electric Co. v. Transit Equipment Co.* 57 N. J. Eq. 460, 42 Atl. 101. They are no more removable without material injury than would be the carrying away of the front door, although the unhinging of the door would be less difficult. The word 'material,' as used in the statutes in one sense, means material injury to the structure, but it also connotes injury to the institution of which the structure is a part."

In *MacLeod v. Satterthwait,* 109 N. J. Eq. 414, 157 Atl. 670, the *dictum* in the *Future Building Case, supra,* was approved with respect to electric refrigerators held under a conditional sales contract and installed in an apartment building.

In *Bank of America Nat. Asso. v. La Reine Hotel Corp.* 108 N. J. Eq. 567, 156 Atl. 28, which involved different kinds of property affixed to the realty, the first sentence of sec. 7 was construed. The opinion is, in our view, a carefully considered one. After giving due consideration to the fact that the Uniform Conditional Sales Act is a new departure; that the law of fixtures, as it was theretofore established, is no longer the controlling law; that the test under the Conditional Sales Act is not that of annexation, use, and intention, but is whether the articles can be removed

without material injury to the freehold; and that resort should be had to the commentaries of the commissioners who drafted the act for its interpretation, the court said, in speaking of the law as it existed prior to the adoption of the Conditional Sales Act:

"Previously such contracts had been controlled, except as to the statutory requirement of notice, by the law of fixtures. But now, the rights of the vendor, vendee, and third parties are controlled by the act itself and the question of annexation and its degree, which in the development of the law of fixtures had been relegated to positions of minor importance, again becomes the controlling factor. In *General Motors Acceptance Corp. v. Smith* (court of errors and appeals, 1924), 101 N. J. L. 154, 127 Atl. 179, Mr. Justice KATZENBACH, referring to the Conditional Sales Act, said: 'This act stands by itself.'"

The opinion then continues:

"Nor, in my judgment, is the law of fixtures, as previously written in this state, to be read into or grafted upon this act. The act stands alone and by its provisions all transactions coming within its purview stand or fall. The basic law of fixtures is not changed by the act. Outside of conditional sales transactions that law and its application remain the same, but it no longer has any application to such agreements, except as it may be useful in determining what is or is not material injury to the freehold. When this act was adopted it was undoubtedly intended that it, and not the law of fixtures as previously evolved, should apply to transactions within its scope. Neither the question of the intention with which a chattel is annexed to the realty, that question being eliminated by the agreement itself, nor the use to which the chattel is to be appropriated, is any longer controlling. 'Material injury in detaching, not intention in attaching, is the test.'"

It was further said in the opinion with reference to the meaning to be given to the word "freehold:"

"In my judgment, the word 'freehold,' as used in the act, refers to the freehold as it stands at the time as of which

the inquiry is made. Where, therefore, the disputed chattel consists of a detachable functional unit, or of any chattel which by annexation has not lost its identity, and is consequently separable without injury either to the freehold or to the chattel itself, the word 'freehold' is exclusive of such chattel. But where the personal property is so incorporated into the realty as to lose its identity, and consequently not separable without material injury, then the word 'freehold' is inclusive of that property because it is no longer personalty but has been absorbed and become a part of the realty."

It should be noted that the opinions in the three New Jersey cases just mentioned were all by trial courts, not by the court of appeals. However, the court of appeals in *Domestic Electric Co. Inc. v. Mezzaluna,* 109 N. J. L. 574, 162 Atl. 722, recently held, with respect to certain Frigidaire equipment, consisting of refrigerators, risers, compressors, cabinets and connecting pipes which had theretofore been sold under a conditional sales contract and installed in an apartment house constructed by the conditional sales purchaser for the owner, that so much of sec. 7 as is intended to protect purchasers had no application to the case, but that the owner of the apartment house came within the purview of the other provisions, and that the goods (Frigidaire equipment) were so affixed to the realty as to become a part thereof and were not removable without material injury to the freehold. The court said, among other things:

"We have here a large building intended for the use, presumably by rental, of numerous separate units by individual tenants or occupants. As an integral part of this construction, a system of refrigeration available to each unit and dependent upon a central system is contracted for and constructed. This includes not only the individual units, but basic parts in the construction of the walls of the building itself. It is under an entire contract calling for construction, and it is impossible to separate the different portions of the equipment one from another and say that this is detachable and this is not, but the system must be considered as a whole.

While the appellant might remove portions of the equipment without physical damage to the property, considered merely as real property, it could not do so without wholly destroying the system considered as part of the building as an apartment house.

"Refrigeration in this day of advanced domestic housekeeping is almost as essential in the home as gas ranges or other cooking appliances and heating equipment."

The court quoted with approval the language found in *Future Building & Loan Asso. v. Mazzocchi,* hereinbefore quoted, and thereupon concluded:

"So, here, the parts replevied were so affixed to the realty as to become a part of a plant essential to the functioning of the apartment building of which they were a part and not severable either in whole or otherwise without material injury to the freehold."

We think the opinion of the New Jersey court of appeals just reviewed imports into the Conditional Sales Act something which is not warranted by the language of the act. The test of removability of goods sold under a conditional sales contract and affixed to the realty is "material injury to the freehold," not whether the goods are essential to the functioning of a plant or building. In *Reliable Building & Loan Asso. v. Purifoy,* 111 N. J. Eq. 575, 163 Atl. 151, it was held with respect to a heating system comprising a boiler, eleven radiators and connecting pipes sold under a conditional sales contract subsequent to certain mortgages on the building, that such property was removable under a conditional sales contract. The court said:

"Removing the system will, of course, diminish the comforts of the dwelling and will depreciate the value of the property to the extent of the cost of the installation of another system of heating, but these are not probative of nonseverability without material injury to the freehold. If they were, all reservations of title to personal property affixed as to become part of the realty would be invalid. The removal

of fixtures conditionally sold, leaving intact the structure, complete and usable as it was before their installation, works no material injury to the freehold within the meaning of the statute."

*Domestic Electric Co. Inc. v. Mezzaluna, supra,* was discussed and distinguished. The opinion, however, was not by the court of appeals.

The court of appeals of New York, in a very recent decision, February 28, 1933 (*Harvard Financial Corp. v. Greenblatt Construction Co. Inc.* 261 N. Y. 169, 184 N. E. 748), held that elevators which had been sold and installed in an apartment house under a conditional sales contract, and which had been affixed to the realty so as to become a part of it, were removable without material injury to the freehold as against subsequent mortgages which covered all fixtures and articles of personal property then or thereafter attached to or used in connection with the mortgaged premises; that the dismantling of the elevators and their severance from the realty would not inflict such injury as can be classed as material within the meaning of sec. 67 of the Personal Property Law of the state of New York. The court said:

"The principal issue of fact litigated at the trial and in the appellate division relates to the question whether the dismantling of the elevators and their severance from the realty would result in material injury to the freehold. Examination of the record convinces us that no evidence supports the finding that their removal would inflict such injury as can be classed as material within the meaning of sec. 67 of the Personal Property Law (Consolidated Laws, ch. 41), which is based upon the definition of that expression as found in the decisions. *Tiftt v. Horton,* 53 N. Y. 377; *Sisson v. Hibbard,* 75 N. Y. 544, 545; *Davis v. Bliss,* 187 N. Y. 77, 83, 79 N. E. 851; *DeBevoise v. Maple Ave. Const. Co.* 228 N. Y. 496, 500, 127 N. E. 487; *Holt v. Henley,* 232 U. S. 637, 640, 641, 34 Sup. Ct. 459; *Detroit Steel Cooperage Co.*

*v. Sistersville Brewing Co.* 233 U. S. 712, 717, 718, 34 Sup. Ct. 753. This elevator system consists of electrical wiring, a motor, a control board, a car or cage, cables, steel guide rails, cable wheels and steel beams across the top of the shaft for support of the cable wheels. The evidence by witnesses for both parties is so closely in harmony as to raise no substantial issue of fact. With the exception of the beams, each part of this system can readily be disconnected without disturbing the structure and indeed without leaving more than trivial holes in the brick wall of the shaft. The beams, if allowed to remain, could be utilized as part of a new system to be installed. Sec. 67 of the Personal Property Law deals with goods severable 'wholly or in any portion,' and the evidence here shows that, except for an extremely small portion of the elevator system, the goods are severable without material injury to the freehold."

It is our opinion that the New Jersey courts in *Bank of America Nat. Asso. v. La Reine Hotel Corp., supra,* and *Reliable Building & Loan Asso. v. Purifoy, supra,* and the court of appeals of New York in *Harvard Financial Corp. v. Greenblatt Construction Co., supra,* correctly construed sec. 7 and that such construction is in accord with the intention of those who framed it.

It therefore follows that since the rights of subsequent purchasers are not involved in this controversy and since we concur in the conclusion of the trial court that the several machines and the sprinkler system are severable "without material injury to the freehold" as those words should be construed, the judgment of the circuit court must in all respects be affirmed.

*By the Court.*—Judgment affirmed.

The following opinion was filed October 10, 1933 :

NELSON, J. (*on motion for rehearing*). The trustee under the mortgage and as assignee of certain claims for me-

chanics' liens, the receiver of the mortgagor, and certain of the parties who purchased bonds at times subsequent to the time of their original underwriting or purchase, move for a rehearing and with pronounced manifestation of disappointment criticize the decision of the court. They suggest that possibly due to the lapse of time between the oral argument which was had on February 8th and the handing down of the decision on June 29th, the court overlooked material facts and the law applicable. While the criticism is decidedly unjust, it may be passed without particular notice on the assumption that counsel's zeal, in this particularly important case, has led them to say things which in their calmer moments they may regret. This case was given unusually careful consideration. It was considered at four different conferences. Inquiries in the meantime were directed to the reporters of several eminent courts and to the Edward Thompson Company which publishes the annual supplements to Uniform Conditional Sales Annotated, with the hope that we might have the benefit of recent decisions of other courts, not cited by counsel, or appearing in the 1932 supplement to Uniform Laws Annotated. As a result of our inquiries at least two decisions not cited by counsel were brought to our attention of which we had the benefit in our deliberations.

Counsel state in their brief on this motion that the decision involves a fundamental declaration as to the construction of the Uniform Conditional Sales Act. That this is true is fully appreciated by this court.

Counsel complain that the court did not in its opinion specifically deal with certain questions raised respecting the asserted rights of the mechanic's lien claimants, the judgment creditors, and certain bondholders who bought their bonds subsequent to the original issue and sale thereof, to priority over the conditional sales contracts. The reason we

did not specifically treat those questions is that we deemed the contention of the appellants with respect to such questions unsound.

This court specifically held that this controversy is governed by sec. 7 of the Uniform Conditional Sales Act and particularly by the first sentence thereof. Obviously it is not governed by the second sentence of sec. 7 since the rights of a "subsequent purchaser of the realty," as defined by sec. 1 of the act—" 'purchaser' includes mortgagee and pledgee," sec. 122.01, Stats.—are not involved. In spite of the fact that the act specifically defines the word "purchaser," counsel argue that a mechanic's lien has the "force and effect of a mortgage;" that the rights of a judgment creditor are analogous to those of a mortgagee, and that the purchaser of bonds sold subsequently to their original sale should somehow or other be regarded as occupying the same position as a subsequent mortgagee. The answer to counsel's argument is that neither a mechanic's lien claimant, a judgment creditor, nor a purchaser of a bond subsequent to its original sale is a subsequent purchaser as defined by the act. By the second sentence of sec. 7 it is provided that "if the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against *subsequent purchasers* of the realty for value and without notice," unless the contract or copy thereof shall be filed, etc. Clearly, under the second sentence of sec. 7 an unfiled conditional sales contract is void only as to "subsequent purchasers." Had those who drafted this act intended that holders of mechanics' liens, judgment creditors, and purchasers of bonds subsequent to their original issue and sale, should be included in the definition of "purchaser," it is reasonable to conclude that they would have so provided.

As to any question which may hereafter arise as to the lien of unpaid taxes, it is sufficient to say we shall determine that question when it is presented to us. It is not here now. No mention was made of any controversy with respect to unpaid taxes in the original briefs submitted by the appellants.

*By the Court.*—The motion for rehearing is denied, with $25 costs.